State, ex rel. Charles W. Taylor, Superintendent of Public Instruction of the State of Nebraska, Relator, v. George E. Hall, Treasurer of the State of Nebraska, Respondent.

Filed September 26, 1935. No. 29549.

*Peterson & Devoe,* for relator.

*William H. Wright, Attorney General,* and *Harvey M. Johnsen,* for respondent.

Heard before GOSS, C. J., ROSE and EBERLY, JJ., and FITZGERALD, MESSMORE, REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

This is an original action instituted in this court by the state, on the relation of Charles W. Taylor, as superintendent of public instruction of Nebraska, against George E. Hall, as treasurer of the state of Nebraska, respondent, praying that a peremptory writ of mandamus issue to said respondent requiring him to countersign and pay a warrant dated April 1, 1935, regularly issued by the auditor of public accounts of the state of Nebraska on the state treasury in the sum of $1,250 for payment of the salary of the relator as superintendent of public instruction for services rendered by him in his official capacity for the quarter ending March 31, 1935. By the amended petition relator alleges that, at a general election in November, 1934, he was elected superintendent of public instruction for a term of four years commencing January 3, 1935, and duly qualified and entered upon his official duties; that respondent is state treasurer and, upon presentation of a warrant duly issued by the auditor of public accounts in the sum of $1,250 for payment of relator's salary for the quarter ending March 31, 1935, refused to countersign and pay the same solely because of and on account of the provisions of section 84-726, Comp. St. Supp. 1933, known as Senate File No. 52, and found at page 297, Laws 1933, a copy of which will be hereinafter set forth. The petition further alleges:

"That on May 1, 1933, the stated and purported effective date of said section 84-726, Comp. St. Supp. 1933, your relator as superintendent of public instruction and the

governor, attorney general, secretary of state, auditor of public accounts, commissioner of public lands and buildings and the treasurer of the state of Nebraska were holding their offices, respectively, for and during a tenure or term which commenced prior to the stated and purported effective date of said act, to wit, May 1, 1933, and ending at midnight of January 2, 1935; that the chief justice, the judges of the supreme court, the judges of the district court, the members of the board of control and the members of the state railway commission were holding their offices, respectively, for and during a tenure or term which commenced prior to the stated and purported effective date of said act; the term or tenure of the chief justice ending in January, 1939, and the tenure or term of the judges of the supreme court ending, respectively, three in January of 1937, and three in January of 1935; the term or tenure of the judges of the district court ending in January, 1937; the term or tenure of the members of the state railway commission ending, respectively, one in 1939, one in 1937, and one in 1935; the term or tenure of the members of the board of control ending, respectively, one in July of 1939, one in July of 1937, and one in July of 1935."

The petition further alleges that under section 3, art. XVII of the Constitution, relator's salary is, and has been at all times since the adoption of the Constitution in 1920, the sum of $5,000 per annum; and sets forth a number of grounds upon which it is claimed that said section 84-726, Comp. St. Supp. 1933, which will be hereinafter set out, is unconstitutional, and prays for a peremptory writ of mandamus.

Respondent answered and admitted the material allegations of the petition, and admits that he refused to countersign and pay said warrant for the sole reason that by section 84-726, for a term of four years commencing January 3, 1935, relator's salary was fixed at $3,400 per annum, whereby he was only entitled to the sum of $850, which respondent has always been ready to pay.

Relator filed a motion for judgment on the pleadings and it was stipulated that the cause be submitted to the court on said motion, the only question involved being the constitutionality of said section 84-726.

We set out in full the act under attack:

"An act relating to fees and salaries; to provide a schedule of salaries for certain state officers mentioned in the Constitution; and the heads of various departments mentioned in the laws of Nebraska, and to declare an emergency.

"Be it Enacted by the People of the State of Nebraska:

"Section 1. It is hereby provided by law that salaries as follows shall be paid to certain state officers mentioned in the Constitution: Governor, $6,000 per annum; Chief Justice and Judges of the Supreme Court, each $5,200 per annum; Tax Commissioner, $4,000 per annum; Judges of the District Court, and Attorney General, $4,000 per annum; Secretary of State, Auditor of Public Accounts, Commissioner of Public Lands and Buildings, Treasurer, Superintendent of Public Instruction, each $3,400 per annum; Members of the Board of Control, each $3,200 per annum; Members of the State Railway Commission, each $3,400 per annum; Director of the Department of Agriculture and Inspection, $3,800 per annum; Commissioner of Labor, $3,000 per annum; Director of Health, $3,600 per annum; State Engineer, $4,800 per annum; Director of Banking, $4,500 per annum; Director of Insurance, $3,600 per annum.

"Section 2. Whereas, an emergency exists, this act shall be in full force and take effect from and after its passage and approval."

The unconstitutionality of the act is asserted upon the following grounds:

(1) That the act is amendatory of sections 77-301, 83-107 and 75-101, Comp. St. 1929, and section 81-103, Comp. St. Supp. 1933, and said sections were not contained in the act and were not thereby repealed, in violation of section 14, art. III of the Constitution of Nebraska, which

reads as follows: "And no law shall be amended unless the new act contain the section or sections as amended, and the section or sections so amended shall be repealed."

(2) That said section is amendatory of the same sections above set out with special reference to salaries of tax commissioner, members of the board of control, members of the state railway commission, director of the department of agriculture and inspection, commissioner of labor, director of health, state engineer, director of banking and director of insurance, and is unconstitutional for the same reason.

(3) That by the provisions of sections 2, 4, 5, 7 and 13 of article V, and section 3 of article XVII, of the Constitution of Nebraska, the judges of the supreme court are created as a distinct class for all purposes of legislation affecting them; that by section 19, art. IV of the Constitution, the members of the board of control are created as a distinct class for all purposes of legislation affecting them; that by section 3, art. XVII, and section 20, art. IV, of the Constitution, the members of the state railway commission were created as a distinct class for all purposes of legislation affecting them; and that as to each of said classes, respectively, section 84-726, Comp. St. Supp. 1933, is class legislation in violation of section 18, art. III of the Constitution, upon the ground that said act does not operate uniformly upon and does not affect alike all persons within the respective classes, and also for the reason that the act is in violation of section 19, art. III of the Constitution, providing that the compensation of any public officer shall not be increased or diminished during his term of office; and that said unconstitutional provisions formed the inducement to the passage of the remainder of the act and rendered said act in its entirety unconstitutional and void.

(4) That neither said act as a whole, nor any part thereof, became effective or operative on the date expressed in the preamble or body of the act, to wit, May 1, 1933.

(5) That it was the intention of the legislature, due to

a general financial depression, amounting to a national emergency, that said act should operate immediately and uniformly in respect of all salary provisions therein from May 1, 1933, the date of its passage, as provided by the emergency clause, which said emergency clause is unconstitutional and void as violating section 19, art. III of the Constitution, forbidding increasing or diminishing the salary of any official during his term of office, and that said clause formed the inducement to the passage of the remainder of the act and renders said act void in its entirety.

Upon the face of the petition, it appears that relator's prior term commenced January 2, 1931, and ended January, 1935; his present term began January 3, 1935, he having been reelected in November, 1934. Under section 19, art. III of the Constitution, his salary could not be changed during his prior term, whether the effective date of the act was May 1, 1933, under the emergency clause, or, without such clause, three months after the adjournment of the legislature. It appears that relator had served as superintendent of public instruction for the four-year term beginning January, 1931, and received a salary of $5,000 a year for the entire term, notwithstanding the passage of section 84-726, Comp. St. Supp. 1933. It is therefore apparent that relator is not directly affected by the asserted invalidity of the statute under numbers 1 and 2 as above set forth, for the reason that the salary of relator as superintendent of public instruction is not covered or affected by any one of the statutes sought to be amended; the relator is a constitutional officer whose salary was fixed by the Constitution at $5,000 a year until otherwise provided by law (Const. art. XVII, sec. 3) and the act in question fixing the salary of relator was not amendatory of any other act, but was an original act in pursuance of the authority granted by the Constitution. As to number 3, relator is not a member of any one of the classes as to which the act is asserted to be invalid as class legislation. As to number 4, under our decision in *State v.*

*Hall*, 125 Neb. 236, later referred to, and as above suggested, the act was ineffective to reduce relator's salary during his then term expiring January 2, 1935. Whether it was effective as to his term beginning January, 1935, is open for decision. As to number 5, the query is whether relator may urge the invalidity of the act upon the ground that invalid portions of the act, other than that referring to his own salary, were the inducement for the passage of the act and the entire act was thereby rendered void.

With reference to this situation, it is the contention of respondent that relator has no standing to assert the unconstitutionality of the statute upon grounds which do not affect him personally or are not applicable to the particular case of relator, and this seems to be the general rule, based upon the general proposition that courts will not ordinarily decide questions of law not presented by the necessities of the particular case before them, or by the decision of which the plaintiff will receive no personal benefit, or a refusal to decide them will result in no injury to him. *In re Gibson*, 35 N. M. 550; *Young Co. v. McNeal-Edwards Co.*, 283 U. S. 398; *State Tax Commission v. Board of Supervisors*, 29 Pac. (2d) (Ariz.) 733; *State v. Howard*, 67 Okla. 289; *Urbach v. City of Omaha*, 101 Neb. 314.

These cases, however, do not deal with situations involving the question of the effect upon the entire act where certain sections or provisions thereof are found to be in conflict with the Constitution, and such invalid portions are the inducement, or a material part of the inducement, for the enactment of the valid portions. If, in the particular case, the act is found to be unconstitutional, and it is apparent that the invalid portion is so connected with other portions of the act, considering the general purpose or object of the legislation, that the rejection of the invalid part will disturb or interfere with the taking effect of the act as a whole, or bring about a result not in accord with the legislative intent, there seems no good reason why the court may not consider the entire act in connection with the invalid part for the purpose of discovering and de-

claring the legislative intent and determining whether the invalid portions were a part of the inducement for the enactment of the remainder; and relator claims that the reduction of his salary was a part of such inducement which opens the inquiry as to what was the entire inducement of which relator claims the section relating to his individual case is a part. Furthermore, if the entire act is void by reason of invalid portions constituting an inducement for enactment of remainder, relator would suffer injury by a refusal of the court to decide that question. In truth, it would seem the duty of the court, in the interest of prompt and orderly administration of justice, and definite settlement of disputes as to the validity of an act, and to prevent unnecessary litigation, to make its pronouncement upon the law as a whole, especially where the question is one of great public interest, and the rights of numerous persons are involved.

The act under consideration deals with the salaries of numerous officials—7 supreme justices, 35 district judges, 6 state heads of departments, 1 tax commissioner, 1 governor, 1 attorney general, 1 auditor of public accounts, 1 commissioner of lands and buildings, 1 superintendent of public instruction, 3 members of the board of control, and 3 members of the state railway commission; it purports to reduce the salaries of all except the 6 heads of departments, as to each of which an increase is provided; it has but one subject—salaries, which is treated of only in section 1. Section 2 is the emergency clause. We are, therefore, of the opinion that, although the salary of only one official, superintendent of public instruction, is directly involved in the present application for a writ of mandamus, for the purpose of determining the question whether the particular provision is so connected with the other provisions of the act as to make them interdependent, we should take a comprehensive view of the entire act, taking into consideration its valid and invalid provisions, as may be determined, and decide whether and what portions constituted the inducement for other portions; con-

cretely, whether the reduction of salaries of other officials (if invalid) was an inducement for the reduction of the salary of relator and *vice versa*.

We will discuss the objections to the act in the order in which they are presented in the brief of relator.

Numbers 1 and 2 may be considered together: That the act is amendatory of section 77-301, Comp. St. 1929, fixing the salary of the tax commissioner at $5,000 per annum, reducing it to $4,000. Also, section 83-107, fixing the salaries of members of the board of control at $4,000, reduced to $3,200. Also, section 75-101, fixing the salaries of railway commissioners at $3,000, increasing it to $3,400. Also, section 81-103, Comp. St. Supp. 1933 (Laws 1933, ch. 149), fixing salaries of departmental heads of agriculture, labor, health, engineer, banking and insurance at varying amounts, which were increased by the act in question, which may be referred to as House Roll 63, or section 84-726, Comp. St. Supp. 1933.

The constitutional provision claimed to have been violated is that portion of section 14, art. III, which reads as follows: "And no law shall be amended unless the new act contain the section or sections as amended, and the section or sections so amended shall be repealed."

The act in question does not purport to be amendatory of any other act; it refers to no other acts, and there was no attempt to comply with the constitutional requirement above quoted. It is, however, strictly amendatory; it seeks to change the salaries, already fixed by law, of certain officers. That such an act is invalid needs no citation of authority; in fact, we think its invalidity is conceded subject to the one exception, that an act complete in itself is not invalid because it may incidentally modify, change or destroy the effect of existing statutes. *State v. Moorhead,* 100 Neb. 298; *Drew v. Mumford,* 114 Neb. 100.

But is the act complete in itself? The subject is salaries; but by its terms it affects only "certain state officers mentioned in the Constitution, and the heads of various departments mentioned in the laws of Nebraska." It does

not purport to cover the entire subject of salaries of state officers and heads of departments. There are numerous state officers not mentioned in the act, whose salaries are fixed by law, so that the present act is not complete on the subject, it being necessary to refer to other acts as to salaries of other state officers. And the sole purpose and effect of the act is to change existing statutes; it presents no new subject of legislation; it is purely and simply amendatory. The language of Eberly, J., in *State v. Bauman*, 126 Neb. 566, is strictly applicable:

"In truth, the new enactment accomplished nothing of independent nature and its effect is wholly confined to 'changes' of what theretofore existed, with the evident intent of its authors that by the mingling of the new changes with the old provisions a connected piece of legislation covering the same and original subject would result. But this is strictly a process of amendment."

That an act purely amendatory which fails to comply with the constitutional requirement above quoted is void is held in the following, among numerous, cases in this state: *State v. Bauman*, 126 Neb. 566; *Endres v. McDonald*, 115 Neb. 827; *State v. Majors*, 85 Neb. 375; *Dinuzzo v. State*, 85 Neb. 351; *Tukey v. Douglas County, ante*, p. 353. There seems to be no question but that the act is invalid in so far as it attempts to change the salaries of the officials designated in the prior statutes, for failure to comply with the constitutional requirement as to amendments.

3. That the judges of the supreme court constitute a class under the provisions of the Constitution, and that all legislation concerning them must operate uniformly upon them all.

That judges of the supreme court constitute a class is founded upon a number of sections of the Constitution having special application to those officers as a group, such as: "The supreme court shall consist of seven judges, one of whom shall be the chief justice" (Const. art. V, sec. 2); provisions for the election of supreme judges from six

compact districts of approximately equal population; prescribing the qualifications of members; and the salaries they shall receive. These and many other provisions not necessary to enumerate have specific reference to those persons occupying the position of supreme judge, and set them apart as a distinct group or class. Counsel for respondent upon the argument remarked that the conception of a group of *officials* as a class was one of extreme difficulty, but the number of classes into which the citizens may be divided is practically infinite; a large number of them are mentioned in 12 C. J. 1131, such as insane persons, infants, old age, school children, blind persons, absent voters, convicts, tramps, attorneys, physicians, bakers, *et cetera*. It would seem to be an unwarranted discrimination to exclude the supreme judges from classification along with these groups of worthy people merely upon the ground that they were so unfortunate as to hold public office.

The power by constitutional or legislative provisions to designate classes of individuals, corporations, municipalities, associations and other groups is unquestioned; the only limitation being that, if fixed by legislation, the classification shall be reasonable—based upon peculiar circumstances surrounding the various persons, corporations, *et cetera*, composing each separate group. To constitute a group of individuals a class, it is not necessary that they be so denominated in the act; it is sufficient if the provisions of the act are made specially applicable to such group by reason of "such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity, or propriety, of different legislation with respect to them." *Hubbell v. Higgins,* 148 Ia. 36. See *Nichols v. Walter,* 37 Minn. 264. As was said in *Johnson v. Gunn,* 148 Cal. 745: "The classification is a proper one if the subjects included in it have some natural or intrinsic or constitutional distinction which differentiates them from other subjects of like general character, a distinction which bears some relation to, furnishes reasonable

cause for, or makes appropriate, the particular legislation." We have no hesitancy in holding that judges of the supreme court, judges of the district court, members of the railway commission and members of the board of control, respectively, constitute separate and distinct classes for purposes of legislation regarding them; each class satisfies the conditions set out in *Johnson v. Gunn, supra,* which states a rule sustained by all the authorities upon the subject.

There is no prohibition against "class legislation" by that name in the Constitution of this or any other state, or that of the United States, but the terms are used in decisions from all jurisdictions as a characterization of legislation in contravention of the Fourteenth Amendment to the Constitution of the United States providing: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of its laws;" also state Constitutions and statutes prohibiting the enactment of special laws granting any special or exclusive privileges, immunities or franchises, or the passage of any laws for the benefit of individuals inconsistent with the general laws of the land. 12 C. J. 1128, and cases cited.

The applicable provisions of our Constitution are found in section 18, art. III, providing:

"The legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted."

A law to be general must operate uniformly upon all persons and localities of a class brought within the relations or circumstances provided for. *State v. Berka,* 20 Neb. 375. It follows from this statement of the

rule that a law is not general but special which does not operate uniformly upon the class within the relations or circumstances provided for. In *Bessette v. People*, 62 N. E. 215 (193 Ill. 334) it was held that a statute "regulating horseshoeing * * * shall apply to cities of over 50,000 inhabitants, but that cities of over 10,000 inhabitants may adopt its provisions, thus excluding towns of under 10,000 inhabitants, is an arbitrary and unreasonable discrimination between persons engaged in the same occupation" (a class composed of horseshoers); and also void if construed as a classification of towns or cities. In *Badenoch v. City of Chicago*, 222 Ill. 71, an act making salaries and wages of officers and employees of certain municipalities subject to garnishment, and exempting others, was declared void and discriminatory as between persons of the same class. In *Galloway v. Wolfe*, 117 Neb. 824, we held that an act making it a misdemeanor for any person of the age of 14 years and upward to be found on the first day of the week, commonly called Sunday, engaged in public dancing, and excepting from the act cities of the metropolitan class having a welfare board with authority to regulate public dancing, was void as class legislation, in that it discriminated between persons of the same class doing the same act in metropolitan cities and other sections of the state. In *State v. Herrmann*, 75 Mo. 340, it was held that an act applicable only to notaries public in the city of St. Louis, and to notaries whose commissions bore date prior to the act and had not expired when the act took effect, was special legislation, as it did not include all persons belonging to the class—notaries public.

In *State v. Julow*, 129 Mo. 163, it was held that an act which does not relate to all working men, but only to those who belong to some lawful organization or society, was void as class legislation. The Missouri court quotes from Cooley, Constitutional Limitations (6th ed.) pp. 481-483, as follows:

"A statute would not be constitutional * * * which should select particular individuals from a class or locality,

and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. * * * Every one has a right to demand that he be governed by general rules, and a special statute, which without his consent singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments." It is then stated: "The legislature may legislate in regard to a class of persons, but they cannot take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and enact different rules for the government of each." *State v. Julow, supra.*

See, also, *State v. Walsh,* 136 Mo. 400. Also, *State v. Garbroski,* 111 Ia. 496, involving discriminatory legislation affecting peddlers as a class.

Does the act in question operate uniformly upon the persons occupying the office of supreme judge considered as a class? It is to be noted that by the emergency clause the act was to take effect May 1, 1933. At that time there were in office a chief justice whose term expired in January, 1939, three justices whose terms expired January, 1935, and three justices with terms expiring January, 1937. The salary of these judges is fixed by the Constitution at $7,500 per annum and may not be increased or decreased during their respective terms. Const. art. III, sec. 19. Therefore the emergency clause could not take effect and the law is unconstitutional as changing their salaries during their terms. We so held with reference to the salary of a member of the railway commission in *State v. Hall,* 125 Neb. 236. But the act is also invalid as class legislation because, if given effect according to its terms on May 1, 1933, it would not operate uniformly upon all members of the class of judges of the supreme court, for the reason that, if the reduction of salaries is made effective, after January, 1935, as to those judges whose terms expired at

that time, or their successors, and as to those whose terms expire January, 1937, the chief justice would draw a salary of $7,500 until January, 1939, three justices $7,500 until January, 1937, and the other three $5,200 during the same period. The only distinction between the two groups of three judges is the fact that one group was elected from even numbered and the other from odd numbered districts. It requires no argument to show that such distinction furnishes no reasonable basis for classification justifying a departure from the rule of uniformity of operation of laws affecting individuals of the same class. The same situation is presented as to the members of the board of control and state railway commission whose terms expire respectively in 1935, 1937, and 1939. We are also of opinion that the act offends the prohibition against any special or exclusive privileges or immunity to any individual, as its effect, so far as legally enforceable if at all, would be to secure to four supreme judges a salary of $7,500 and allow three of them only $5,200 for the performance of the same duties during the same period of time. The same vice is present in the cases of members of board of control and railway commission, each drawing a different salary from others of the same class for part of their respective terms. We are therefore driven to the conclusion that the act is invalid as class legislation with respect to the salaries of judges of the supreme court; and a *fortiori* those of members of the board of control and the state railway commission.

4. That neither said act as a whole nor any part thereof became effective on the date expressed in the preamble or body of the act, to wit, May 1, 1933. This point may be discussed with No. 5.

5. That the act is void as violating section 19, art. III of the Constitution, forbidding increasing or diminishing the salary of any official during his term of office. That section reads as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, or servant after the serv-

ices have been rendered nor to any contractor after the contract has been entered into, nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof, be increased or diminished during his term of office."

By the emergency clause (section 2), the act was made effective the date of its passage and approval, which was May 1, 1933. On said date relator and all other state officials mentioned in the act (with the possible exception of the heads of departments) were holding their offices for terms ending in January 1935, 1937, and 1939, as above stated; relator's term ending in 1935. It is therefore apparent that the act purports to reduce the salaries of such officers during their terms in direct violation of section 19, art. III, above quoted. That the act is void to the extent that it reduced the salary of the railway commissioners was distinctly held in *State v. Hall*, 125 Neb. 236; and the legal position of the other state officers (with the above exception), including relator, being the same as the railway commissioners as to this point, *State v. Hall, supra*, is determinative of this.

(1) We therefore hold that Senate File 52, being chapter 63, Laws 1933, and being, also, section 84-726, Comp. St. Supp. 1933, is unconstitutional and void as to governor, judges of the supreme court, judges of the district court, attorney general, secretary of state, auditor of public accounts, commissioner of public lands and buildings, treasurer, superintendent of public instruction, members of the board of control, and members of the state railway commission, for the reason that it violates section 19, art. III of the Constitution, prohibiting the increase or decrease of salaries of public officers during their terms of office.

(2) As to supreme court judges, members of the board of control and members of the state railway commission, said act is in conflict with section 18, art. III of the Constitution, and void as class legislation.

(3) That as to the heads of departments of agricul-

ture, labor, health, state engineer, banking and insurance, said act is amendatory and void for failure to comply with section 14, art. III of the Constitution, regarding amendments.

It remains to determine whether any part of the act may be sustained. As we understand the contention of respondent, it is that, though section 2 of the act is invalid, the act may be given a prospective operation and given effect after the expiration of the terms of the various officers designated. Such construction however would not meet the objection that the act is class legislation, for as to three members of the supreme court and the members of the board of control and railway commission, their salaries would not be uniform with those of other members of their respective classes. As to the remaining offices, the validity of such construction would depend upon whether the intent of the legislature would be thereby accomplished, and whether the immediate taking effect of the act as an entirety as provided by section 2 was an inducement for the enactment of section 1.

To the point that the mere fact that the provisions of an act become applicable to certain officers at different times because of a constitutional prohibition against increasing or diminishing salaries during a term of office does not invalidate the act, the state cites three cases, viz., *State v. Stuht,* 52 Neb. 209, *Hopkins v. Scott,* 38 Neb. 661, and *State v. Newbold,* 56 Kan. 71. But an examination of the doctrine of the cases cited, in the light of the statutes construed, discloses that it has no application to the present case. Thus, in *Hopkins v. Scott, supra,* the act construed was chapter 50, Laws 1891. This act was not passed with an emergency. The point of attack was a proviso, in the following words: "Provided, that this act shall not apply and be in force until the expiration of the present term of the state treasurer, and the expiration of the present term of the several county treasurers of the state." This was an express provision in the statute which this court rightfully held did not render the statute void. But no such pro-

vision appears in chapter 63, Laws 1933, under consideration.

The same situation is disclosed when we examine chapter 10, Laws 1897, involved in the case of *State v. Stuht, supra.* This was an Omaha charter. As in the case of *Hopkins v. Scott, supra,* certain provisions by their express terms first came into effect at a future time, and after the passage and approval of the act. Obviously when this occurs by virtue of express terms adopted by the legislature, the action is within the general principle that the legislature may determine a future time as the commencement of an enactment. This fully appears from paragraph 9 of the syllabus in such *Stuht* case, which is as follows:

"A law is not open to the criticism that separate provisions of it take effect at different dates if as an entirety it becomes of effect and operative on a fixed date, notwithstanding, as to some persons or matters affected by it, the law is of full operation immediately upon its passing into effect, and as to others its operation is not so full and complete until in the future on the happening of some stated contingency."

The same is true in the case of *State v. Newbold, supra.* In that case the tenth and twelfth sections of the act under consideration read as follows:

"Section 10. This act shall not affect the fees or salaries of the present county treasurer, county clerk, county attorney, register of deeds, clerk of the district court, sheriff, or probate judge, but shall be in full force and effect as to county surveyor."

"Section 12. This act shall take effect and be in force from and after its publication in the official state paper." Laws of Kan. 1893, ch. 81.

So, it will be seen that, by the express terms of this act, it was provided that it was not to "affect the fees or salaries of the present county treasurer," etc.

Thus, in none of the three cases cited is the controlling question involved which is presented in the present case, where we have an unconditional emergency clause without

any special provisions in the nature of exceptions appearing in the act.

Indeed, the Kansas case does not involve an "emergency" condition. It arises under a constitutional provision which prescribes: "The legislature shall prescribe the time when its acts shall be in force." Kan. Const. art. II, sec. 19.

True, it may be said that when the Kansas legislature has prescribed the date when its acts shall be in force, it has accomplished the same result that the Nebraska legislature achieves when it enacts the usual emergency clause as a part of an enactment. However this may be, the Kansas doctrine on this subject does not support the state's contention, for the reason underlying the Kansas decision wholly fails to sustain the state in the instant case. Thus, in *Commissioners of Cherokee County v. Chew*, 44 Kan. 162, the enactment before the court was, "An act regulating the fees and salaries of the county treasurers, county clerks, county attorneys, probate judge, county auditors and register of deeds of Cherokee and Labette counties, Kansas," which act was approved March 5, 1887. Laws of Kan. 1887, ch. 159. It appears from the record that the terms of the several classes of officers covered by this act expired at various dates. The act itself provided: "This act shall take effect and be in force from and after its publication in the statute book, and after the present term of the officers hereinbefore named shall have expired." The legislative intent evidenced thereby was stated by the Kansas court (44 Kan. 165), as follows: "We conclude, therefore, that the legislature intended to have chapter 159, Laws of 1887, take effect and be in force after its publication in the statute book, *and after the expiration of the terms of all the officers therein named.*" (Italics ours.) See, also, *Finnegan v. Sale*, 54 Kan. 420, and *State v. Deets*, 54 Kan. 504.

It will be noted that the act under review contains no saving clause as to the salaries of officers during their existing terms; neither does it contain any provision that

any part of the act shall take effect at some date other than that of its passage. The evident intent of the legislature, derived exclusively from the language of section 2, was that the act should take effect in its entirety upon its passage and approval. Upon a merely cursory reading of the title and two sections of the act, the mind is irresistibly driven to the conclusion that in the judgment of the legislators a real emergency existed which called for drastic reduction of expenses by a slash of salaries of a large number of state officers to take effect immediately; and the need appears to have been so urgent that the lawmakers overlooked or ignored the mandatory provisions of the Constitution. There is no ambiguity in the act; its language is simple and plain, and leaves no room for construction. In our opinion to indulge the presumption that the legislature would have passed the act had it realized that it could have only a prospective operation, its separate provisions taking effect from 2 to 7 years after its passage, by which time the emergency may have passed away, would do violence to the clear expressions of the act and the legislative intent. A construction which would give the act an effect contrary to the intent of the legislature will not be adopted, and if such construction is the only one possible, the entire act must fall. "If a clause in a statute which violates the Constitution cannot be rejected without causing the act to enact what the legislature never intended, the whole statute must fall." *Spraigue v. Thompson,* 118 U. S. 90.

The situation here presented is that the act cannot be given effect as to a single one of the more than fifty officers designated, at the date when by its terms the act is to take effect. In the face of this fact, is there room for any presumption that the act would have been passed but for the declared emergency? or a presumption that the legislature intended that, contrary to its express words, if it could not take effect at once, it should do so at some distant date? The query seems to furnish its own answer. Quite the contrary, the presumption, if one may be indulged contrary

to the express language of the act, is that the act was intended to operate as a whole in the absence of a saving clause or express exception. *Smith v. Thompson,* 258 N. W. (Ia.) 190. We are of the opinion that the dominant purpose of the legislature was to effect a drastic reduction of salaries to take effect at once, and that, if such purpose is defeated in, at least, its substantial entirety, the act must fall. And, further, that the invalid emergency clause (section 2) was the inducement for the enactment of section 1 and drags the latter down with it. Furthermore, we consider the attempted reduction of relator's salary is so connected with and interdependent upon the reduction of salaries of other officers as to be a part of the inducement for the enactment as a whole.

The case of *Smith v. Thompson, supra,* is directly in point both upon fact and law. The statute there under review was a salary reduction act whereby the salary of relator as county treasurer of Woodbury county was reduced, and the action was in mandamus to compel the issuance of a warrant at the rate existing prior to the attempted reduction. The act provided for a reduction of salaries of a large number of state officers, and was held invalid as to members of the general assembly and the lieutenant governor as not within the title, and as to the judges of the supreme and district courts as violative of a constitutional provision that their compensation "shall not be increased or diminished during the term for which they shall be elected." The holding of the court is clearly expressed in the following syllabi:

"9. Judges. Sections of act reducing salaries of supreme and district court judges without stating when they should become operative *held* invalid as contravening constitutional provision against diminution of such judges' compensation during terms for which they were elected, in view of section declaring act effective on first day of month after its enactment. * * *.

"10. Constitutional law. In absence of saving clause in salary reduction act, containing unconstitutional provisions

reducing supreme and district court judges', legislators', and lieutenant governor's salaries, presumption is that act was intended to operate as whole, especially in view of recital that all statutory provisions 'relating to salaries be amended, revised and codified in accordance herewith.'
* * *

"11. Statutes. Legislature's intent is controlling element in interpretation of statute.

"12. Statutes. In ascertaining legislature's intent, object sought thereby, surrounding circumstances, and context of act under consideration may be considered.

"13. Statutes. Whole act, declared purpose and intent of which is to accomplish single object, must fail if some provisions are void, unless sufficient remains to effect such object without aid of invalid parts.

"14. Statutes. Whole act having single objective or purpose must fall, if constitutional and unconstitutional parts are so connected and interdependent that rejection of unconstitutional part would destroy legislative intent.

"15. Statutes. Provisions of salary reduction act as to various officers *held* so connected and interdependent in object, subject-matter, meaning, and purpose that elimination of unconstitutional sections, reducing compensation of members of legislature, lieutenant governor and supreme and district court judges would defeat legislature's intention, so as to render whole act unconstitutional."

After citing 6 R. C. L. 127, sec. 125, to the effect that, where the invalid portion of an act has a material relation to its other portions so as to modify, restrict or extend its application, it will cause the fall of the other portion also; and "Frequently a single part of an act may be of so great importance that, although in itself it may not be an inducing cause for the enactment of the legislation, its invalidity may render the whole act void;" and, from 6 R. C. L. 125, sec. 123:

."One of the tests used to determine whether a statute is or is not severable so that a portion may be rejected is that it ought not to be held wholly void unless the invalid por-

tion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional; but where the valid and the invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid. This test is merely a means of ascertaining and carrying out of the presumed intention of the legislature. If it appears that the invalid portion was designed as an inducement to pass the valid, the inference is that the legislature would not have passed the valid portion alone."

Anderson, J., then continues:

"It will be noticed that one of the pronounced lines of distinction in the various cases relative to a statute invalid in part, and being sustained as to that part which is valid and rejected as to that part which is invalid, is whether or not the statute under consideration relates to two or more subjects or objects; if it relates to two objects, one being void, the other may still be complete within itself and valid, but if the declared purpose and intent of the statute is to accomplish a single object only, and some of its provisions are void, the whole act must fail unless sufficient remains to effect the declared object without the aid of the invalid part. See *Cap. F. Bourland Ice Co. v. Franklin Utilities Co.,* 180 Ark. 770, 22 S. W. (2d) 993, 68 A. L. R. 1018. It follows that the point to be determined here is whether the unconstitutional provisions are so connected with the general scope of the act as to make it impossible, if they are stricken out, to give full effect to what appears to have been the intent of the legislature. * * * .

"Where the act is single as to its objective, or seeks to obtain a single object or purpose, then if part of the act is unconstitutional, such part cannot be separated from the constitutional part if they are connected and dependent upon each other so that if you reject the unconstitutional part you destroy the legislative intent, then the whole act must fall.

"In the instant case, the legislature has declared the object, the intent, and the purpose of the act, and mandatorily said that it shall and must be in force in accordance with such declared intent, purpose, and object. We are constrained to hold that the provisions of the act applying to the various officers are so connected and interdependent in object and subject-matter, meaning, and purpose that the elimination of the objectionable or unconstitutional sections would result in a condition not contemplated or desired by the legislature. And it follows that the whole act must be declared unconstitutional and invalid."

We approve the reasoning and holding in that case, and, while not absolutely controlling, we are content to follow it as an authoritative precedent.

In Williams v. Standard Oil Co., 278 U. S. 235, it was held: "A declaration in a statute that if any of its provisions be held invalid the validity of others shall not be thereby affected creates a presumption of separability in place of the general rule to the contrary—a presumption overcome, however, when inseparability is evident or where there is a clear probability that, the invalid part being eliminated, the legislature would not have been satisfied with what remains." In the instant statute there is no such declaration and the presumption is that the legislature intended the act to take effect in its entirety or not at all. We quote further from the opinion in the Williams case, pp. 241-242:

"In Hill v. Wallace, 259 U. S. 44, 71, it is said that such a legislative declaration serves to assure the courts that separate sections or provisions of a partly invalid act may be properly sustained 'without hesitation or doubt as to whether they would have been adopted, even if the legislature had been advised of the invalidity of part.' But the general rule is that the unobjectionable part of a statute cannot be held separable unless it appears that, 'standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall.' The question is one of

interpretation and of legislative intent, and the legislative declaration 'provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not an inexorable command.' *Dorchy v. Kansas,* 264 U. S. 286, 290.

"In the absence of such a legislative declaration, the presumption is that the legislature intends an act to be effective as an entirety. This is well stated in *Riccio v. Hoboken,* 69 N. J. Law, 649, 662, where the New Jersey court of errors and appeals, in an opinion delivered by Judge Pitney (afterward a justice of this court), after setting forth the rule as above, said: 'In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process.' " , See, also, *People v. Knapp,* 230 N. Y. 48; *Chicago, M. & St. P. R. Co. v. City of Minneapolis,* 238 Fed. 384.

In *Redell v. Moores,* 63 Neb. 219, the rule was stated: "Where portions of a statute are held unconstitutional, if the remainder is not so connected with such portion as to be incapable of separation, and the remainder is a complete act, and not dependent upon the part held invalid, the latter alone will be disregarded and the remainder upheld, except in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder." Another feature of the case should be noted in connection with the introduction and passage of the act in question, as bearing upon the inducement thereto and the effect of partial invalidity. The following excerpts from *Redell v. Moores,* 63 Neb. 219, are pertinent:

"That a part of an act, or even a part of the same section of an act, may, under some circumstances, be held unconstitutional, without invalidating the remainder, is elementary. This court has said that, 'Where a statute con-

tains provisions which are invalid or unconstitutional, if the valid and invalid portions are not so connected as to be incapable of separation, and the valid part is a complete act and not dependent upon the part that is void, the latter alone will be disregarded and the remainder upheld, * * * *except in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder.'* (Italics ours.) *State v. Moore*, 48 Neb. 870; *Scott v. Flowers*, 61 Neb. 620; *State v. Lancaster County*, 6 Neb. 474; *State v. Hardy*, 7 Neb. 377; *State v. Lancaster County*, 17 Neb. 85; *State v. Hurds*, 19 Neb. 316; *Trumble v. Trumble*, 37 Neb. 340; *Low v. Rees Printing Co.*, 41 Neb. 127; *State v. Stuht*, 52 Neb. 209. In view of the doctrine announced in the cases just cited, we are not called upon to determine the effect of the decision in the case of *State v. Moores* (55 Neb. 480) on the entire act, because it follows irresistibly that the section held invalid drags down with it only such other parts as are inseparably connected with, dependent upon, or incomplete without it, or for the passage of which it served as an inducement. One question, then, that meets us at this point, is whether that portion of the act held invalid, namely, that portion conferring the appointing power on the governor, served as an inducement to the legislature for the passage of the other portions of the sections hereinbefore set forth. Counsel for the defendant insists that this question is to be determined solely by an inspection of the act itself. In this view we are disposed to concur, with this qualification, however, that the persons whose duty it may be to inspect the act with a view to the determination of that question are not required to divest themselves of all knowledge save that to be gleaned from the act alone. For, were it possible for them thus to divest themselves, the act would be unintelligible,—a jumble of words without meaning. So, when we say that the question is to be determined by an inspection of the act itself, we imply that those under whose inspection it is brought will scan it in the light of that knowledge which they possess in common with other

men. There is no presumption that courts are ignorant of all matters that transpire outside the courtroom. On the contrary, there are many matters outside the science of the law of which they are required to take judicial notice. Bishop, in his work on Statutory Crimes (3d ed.), sec. 77, says, 'They (courts) do not close their eyes to what they know of the history of the country and of the law, of the condition of the law at the particular time, of the public necessities felt, and other like things.' The supreme court of Michigan, in *Sibley v. Smith,* 2 Mich. 487, say, 'Courts are authorized to collect the intention of the legislature from the occasion and necessity of the law,—from the mischief felt, and the objects and remedy in view.' The supreme court of the United States, speaking through Davis, J., in the case of *United States v. Union P. R. Co.,* 91 U. S. 72, say, 'Courts, in construing a statute, may with propriety recur to the history of the times when it was passed, and this is frequently necessary, in order to ascertain the reason, as well as the meaning of particular provisions in it.' In *Stout v. Board of Commissioners,* 107 Ind. 343, * * * it is held that the history of a country, its topography and general conditions are elements which enter into the construction of laws made to govern it, and are matters of which the courts will take judicial notice. It has been held that the general state of opinion, public, judicial and legislative, at the time of an enactment of a measure may be considered by the courts in construing it. *Keyport and Middletown Point Steamboat Co. v. Farmers Transportation Co.,* 18 N. J. Eq. 13; *Delaplane v. Crenshaw & Fisher,* 15 Gratt. (Va.) 457. In *State v. Boyd,* 34 Neb. 435, it was held that the courts will take notice, without proof, of events which are generally known within the limits of their jurisdiction. The foregoing, we think, makes it clear, were it ever doubtful, that in the determination of the question before us we are neither required nor permitted to affect ignorance of those things which are matters of common knowledge. The attempt to confer upon the governor the power to appoint members of the

board of fire and police commissioners, and the reasons urged in support of such measure, are a part of the legislative history of the state. No other feature of the act under consideration, nor of those it was intended to supersede, attracted so much attention or invited so much discussion as that which placed the power of appointment in the hands of the governor, removing, as it was claimed at the time, the board of fire and police commissioners from the influence of local politics. It is a matter of common knowledge that this feature of the act, so far as the board of fire and police commissioners is concerned, was the chief inducement to its passage. Without that feature, its promoters would have regarded it much as they would have regarded the play of Hamlet with Hamlet left out."

In 59 C. J. 1014, the following appears: "In seeking to ascertain the legislative intent where the language of a statute is ambiguous, the courts will take into consideration all the facts and circumstances existing at the time of, and leading up to, its enactment, such as the history of the times, * * * of the proceedings attending its actual passage through the legislature as disclosed by the legislative journals."

And it is stated in 59 C. J. 1019: "Under the general rule, amendments or modifications, and changes in the frame of the bill during its passage, and the action of the legislature on amendments offered, may be considered."

See, also, *Chicago, B. & Q. R. Co. v. Amack,* 112 Neb. 437.

Taking up chapter 63, Laws 1933, we find that, as originally introduced, and as passed in the senate, it was limited by a title to "A bill for an act relating to fees and salaries; to provide a schedule of salaries for certain state officers mentioned in the Constitution; * * * and to declare an emergency." This bill was amended in the house, and after three conference committee reports had been made and rejected, the fourth conference committee report, which added to the original bill a provision covering an increase of salary for the director of the department of

agriculture and inspection, the commissioner of labor, the department of health, the state engineer, the director of banking, and the director of insurance, was approved, and there was an agreement of the senate and house, and the bill was enacted into law. In view of the rule announced in the authorities referred to, as to the proper consideration of "amendments or modifications, and changes in the frame of a bill during its passage, and the action of the legislature on amendments offered," the record amply supports the conclusion that the amendments to the original chapter 63, Laws 1933 (Senate File No. 52), which incorporated the provisions for salaries for other than constitutional officers referred to in the title as "heads of various departments mentioned in the Laws of Nebraska," constituted the controlling inducement for the passage of Senate File No. 52. These provisions, as we have seen, were wholly void and unconstitutional.

When an act is severable in its essence, the void portions may be disregarded. "Inducements," however, are different in their effect. They enter into and taint all which is comprised in the legislation they secure. The evil effects are not severable and the entire enactment must fall.

We have discussed the question of the effect of invalid portions upon the entire act where they formed an inducement to its passage. As a matter of fact, if effect is to be given to both sections 1 and 2, no part of the act is valid for any purpose, and the application of rules of law pertaining to inducement becomes pertinent only if the taking effect of the act, contrary to its express terms, may be set forward from two to seven years beyond the date of its passage. This, as we have shown, may not be done without doing violence to the legislative intent, and putting into effect a law which the legislature would not recognize as its own, and which it would not have passed with the invalid portions stricken out, had their attention been called to them. As hereinbefore noted, the act contains no saving clause nor any provision that any portion of it shall

take effect at any specified date other than that of its passage. We cannot presume that such was the intention of the legislature in the face of its positive provision.

Notwithstanding a most painstaking effort to sustain the act of the legislature or any valid portion thereof, which is our constitutional duty, we are forced to conclude that the entire act is invalid for the reasons stated.

It follows that the writ of mandamus must be granted as prayed.

WRIT ALLOWED.

SHEPHERD, District Judge, dissents.