SCHOOL DISTRICT NO. 42 OF HITCHCOCK COUNTY, NEBRASKA, ET AL., APPELLANTS, V. IDA M. MARSHALL, AS COUNTY SUPERINTENDENT OF HITCHCOCK COUNTY, NEBRASKA, APPELLEE.

71 N. W. 2d 549

Filed July 15, 1955. No. 33692.

■■■■■■■■■■■■

*Charles M. Bosley* and *Robert C. Bosley,* for appellants.

*Jack H. Hendrix,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action in mandamus. Plaintiffs sought a writ commanding the defendant as county superintendent of schools to fix a date for hearing on petitions to create a new school district from three existing districts, to give notice of the hearing, and for other appropriate relief.

Issues were made and trial was had. The trial court denied the writ and dismissed the cause. Plaintiffs appeal.

We reverse the judgment of the trial court and remand the cause with directions to issue the writ.

The facts are stipulated. All of the electors of School District No. 36, 13 of the 14 electors in School District No. 15, and all of the electors in School District No. 42 in Hitchcock County filed petitions with the defendant county superintendent of schools, petitioning that School Districts No. 36 and No. 15 be attached to School District No. 42. The defendant thereafter submitted the matter to the state committee for the reorganization of school districts. That body did not approve the plan. The defendant then refused to fix a date for a hearing on the petitions. This action followed.

Plaintiffs rely on the provisions of section 79-402, R. S. Supp., 1953, providing: "The county superintendent shall create a new district from other districts, * * *

upon petitions signed by fifty-five per cent of the legal voters of each district affected. * * * Before the county superintendent authorizes any changes as provided in this section, the county superintendent must fix a date for hearing and give all interested parties an opportunity to be heard at such hearing."

In Cacek v. Munson, *ante* p. 187, 69 N. W. 2d 692, we held: "* * * where the record of the proceedings before a county superintendent of schools in a proper hearing upon petitions filed under section 79-402, R. S. Supp., 1953, discloses that 55 per cent or more of the legal voters of each school district affected have filed petitions requesting a change of boundaries, the county superintendent has the jurisdiction and mandatory duty to order the boundary changes requested by such petitions."

This was followed in Olsen v. Grosshans, *ante* p. 543, 71 N. W. 2d 90.

Defendant relies on a provision of the statute not involved in the above two decisions. In 1953, the Legislature amended section 79-402, R. S. Supp., 1951, in part by inserting therein the following: "Any plan of reorganization must be submitted to the state committee for school district reorganization and be approved by it before a hearing is had." Laws 1953, c. 295, § 1, p. 999. This provision, mandatory in form, is relied on by the defendant.

The question then is the controlling effect, if any, of the 1953 provision upon the mandatory duty of the defendant which the plaintiffs invoke.

The key to the answer is found in the use by the Legislature of the phrase "Any plan of reorganization" as the subject of the sentence in the 1953 amendment.

Legislation with reference to the powers of the county superintendent to change the boundaries of school districts is of long standing. The Legislature in 1949 enacted a comprehensive recodification of school laws. Laws 1949, c. 256, p. 689. It enacted the first of the two provisions above quoted relied on by plaintiffs. The

second sentence above quoted, relied on by plaintiffs, was enacted as an amendment in 1951. Laws 1951, c. 276, § 1, p. 928.

Also in 1949, the Legislature enacted an independent act cited as the "Reorganization of School Districts Act." Laws 1949, c. 249, p. 673. This act as amended became sections 79-426.01 to 79-426.19, R. R. S. 1943.

In the above act the Legislature created a state committee for the reorganization of school districts and, in each county, a county committee for the reorganization of school districts. The duty of recommending plans and procedures for the reorganization of school districts was placed on the state committee. The county committee was required to consider and determine whether or not the changes should be attempted. The act likewise provided that the county committee could formulate plans of reorganization of school districts which were to be submitted to the state committee for review. The Legislature then, in substance, in 1949 provided for two ways of initiating plans of reorganization at the same session in which it enacted the first of the two provisions relied on by plaintiffs. The Legislature amended the 1949 Act in 1951 (Laws 1951, c. 278, p. 937) in ways not material here.

When the 1953 Legislature met, there existed in the statutory law the provisions above quoted as to the power and duty of the county superintendent to create new districts from other districts, and the two plans for the reorganization of school districts set up in the reorganization act.

We have held that in construing a statute to determine the legislative intent a court may consider the history of its passage, the amendments offered, and action taken by the Legislature thereon. State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835.

Accordingly we go to Legislative Bill 279 introduced in the 1953 Legislature. By its title, in part it was an act to amend section 79-402, R. S. Supp., 1951, "to provide

that the county committee for reorganization of school districts may create a new district from other districts * * *."

This bill in its first section proposed, so far as is material here, to amend section 79-402, R. S. Supp., 1951, as it then existed, by transferring the power of the county superintendent to the county committee for the reorganization of school districts. It is pointed out that "the uniting of one or more established districts" could be accomplished by the reorganization methods. § 79-426.02, R. R. S. 1943. In sections 2 and 3 it was proposed to grant power to "a group of districts" to institute a plan of reorganization, by petition, which was to be sent to the state committee which was required to make a personal check of the plan proposed in conjunction with the county committee.

Legislative Bill 279 as amended became Laws 1953, c. 295, p. 999. Section 1 as enacted is now section 79-402, R. S. Supp., 1953, and sections 2 and 3 became sections 79-426.20 and 79-426.21, R. S. Supp., 1953.

The provision of the title of the bill as introduced, above quoted, was omitted from the title of the act as passed.

The language in section 1 of the bill providing for the transfer of the power of the superintendent to the county committee was eliminated and the language granting power to the county superintendent was re-enacted. The re-enacted section contained the new sentence quoted above upon which defendant relies.

In the same act the Legislature authorized a third method of reorganization of school districts to be initiated by "a group of districts," provided for conjunctive consideration by the state and county committee, and "The proposal, as finally approved or as amended, shall be returned to the county superintendent who shall call an election, * * *."

What then is the scope of the phrase "Any plan of reorganization"? Does it relate to any reorganization,

or to any of the three plans of reorganization, or to any plan of reorganization advanced by "a group of districts" under the 1953 act?

The Supreme Court of Iowa was confronted with a similar problem. There a statute related to "any plan of consolidation" of school districts. The court pointed out that Iowa had an "official plan method" and a "peoples' petition method" of creating new districts. It was held that because the Legislature had enacted a plan of reorganization method and also had made provision for the creation of consolidated districts by petition as an independent procedure, that the statute applied only to every plan initiated under the plan of reorganization act. See Smaha v. Simmons, 245 Iowa 163, 60 N. W. 2d 100. That reasoning is applicable here.

Does the phrase "Any plan of reorganization" relate to the state or county committee method? We decide it does not for the reason that under those procedures the state committee has only advisory powers and there appears no legislative intent to change that power. See §§ 79-426.07 and 79-426.12, R. S. Supp., 1953.

It necessarily follows that it relates to the "a group of districts" plan of reorganization which was set up in the same act where the "Any plan of reorganization" provision was enacted. The provision in section 79-402, R. S. Supp., 1953, here considered fixes a mandatory power in the state committee. The provision in section 79-426.21, R. S. Supp., 1953, fixes a mandatory duty in the county superintendent after the "a group of districts" plan is approved or approved as amended by the state committee acting in conjunction with the county committee. As so construed and applied, the conflict in the considered provisions of section 79-402, R. S. Supp., 1953, does not arise. This is in accord with the reasoning followed in Smaha v. Simmons, *supra,* that the Legislature had in mind the specific subject matter of the law it was enacting.

Accordingly, we hold that the provision in section 79-

402, R. S. Supp., 1953, that "Any plan of reorganization must be submitted to the state committee for school district reorganization and be approved by it before a hearing is had" relates only to any plan of reorganization proposed by "a group of districts" under the provisions of sections 79-426.20 and 79-426.21, R. S. Supp., 1953.

The judgment of the trial court is reversed and the cause remanded with directions to issue the writ prayed for by plaintiffs in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.