CHARLES HUEFTLE, APPELLANT, v. EUSTIS CEMETERY ASSOCIATION, APPELLEE.

106 N. W. 2d 400

Filed November 25, 1960. No. 34815.

*William S. Padley*, for appellant.

*Schroeder & Schroeder*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for injunction. The appeal presents primarily the question as to whether or not the word "city" in the first sentence of section 12-515, R. R. S. 1943, includes "village." By sustaining a general demurrer to plaintiff's petition, the trial court held that it did not. Plaintiff, given leave to file an amended petition, did not do so. His action was dismissed. He ap-

peals. We affirm the judgment of the trial court.

Plaintiff alleged condemnation proceedings by the defendant, Eustis Cemetery Association; that the land involved was "located within a distance of less than one mile from the corporate limits of the Village of Eustis"; that the land sought to be taken was for the purpose of an "addition to said cemetery"; and that the cemetery association was without legal authority to take the land by eminent domain. Plaintiff prayed for an injunction. Defendant demurred for the reason that the petition did not state facts sufficient to constitute a cause of action. The result has been stated above.

Plaintiff presents a question of the power of the defendant to acquire the land by eminent domain. The question of the procedure to be followed is not involved.

Plaintiff assigns as error here the sustaining of the demurrer and the dismissal of his petition.

Defendant here relies upon sections 12-201 and 12-205, R. R. S. 1943. The language involved was originally enacted in Laws 1915, Chapter 172, page 355. The act was a grant of power to "Any incorporated city or village, any incorporated cemetery association" to "secure additional lands adjoining for cemetery and burial purposes in the manner hereinafter set forth."

By its language the "act shall not apply to lands or property within the limits of incorporated cities or villages."

So far as applicable to any situation, the act was a grant of power with a prescribed procedure for securing the rights covered by the power.

Then came Laws 1951, Chapter 101, page 451. This act repealed the strictly procedural provisions of the 1915 act, leaving the 1915 act as it now appears in sections 12-201 and 12-205, R. R. S. 1943. The 1951 act sets up a uniform procedure. It was amended in the legislative process, but not as to portions here involved. The Judiciary Committee in reporting the bill said: "The purpose of this bill is to provide a uniform method

under which the power of eminent domain may be exercised.

"There are, at the present time, over thirty different methods by which various public bodies condemn private property for public use. The Legislative Council and Judicial Council both studied the subject during the past biennium. Public hearings were held. As a result, the Judicial Council adopted as a pattern one of the oldest statutes providing for condemnation, namely, that relating to acquisition of property by railroads. The Legislative Council voted to accept the bill of the Judicial Council.

"While the bill itself seems very long, the procedure is set forth in the first 24 sections of the bill. The remainder of the bill changes existing statutes on eminent domain to conform thereto.

"It is the belief of the Committee that adoption of the bill will bring about not only uniformity in procedure but a decided improvement in the method by which private property is acquired for public use."

The applicable rule is: In construing a statute to determine the legislative intent a court may consider the history of its passage, the amendments offered, and action taken by the Legislature thereon. School District No. 42 v. Marshall, 160 Neb. 832, 71 N. W. 2d 549.

It appears obvious that the 1951 act was intended to be and was a procedural bill leaving in effect the powers granted in the 1915 act, for that which is now section 12-201, R. R. S. 1943, was section 31, and section 12-205, R. R. S. 1943, was section 32 of the 1951 act.

The first sentence of what is now section 12-515, R. R. S. 1943, appears as the last sentence of Laws 1911, Chapter 27, section 1, page 176. It provided a procedure whenever it was necessary to establish or enlarge the boundaries of any cemetery, located outside of the corporate limits of "any city" and provided further that no land shall be thus taken by eminent domain either for the location of or addition to any cemetery which shall

be within one mile of the limits of "any city." Then came Laws 1917, Chapter 12, page 71, granting the power of eminent domain to cemetery associations and again referring to the boundaries outside the corporate limits of "any city." It added a proviso as to an association whose burial ground was within the corporate limits of "a city or village." Then came the act, Laws 1925, Chapter 138, page 365; and then the act, Laws 1941, Chapter 18, page 103, each of which again makes the distinction between "any city" and city "or village" that is contained in the present section 12-515, R. R. S. 1943.

We are now asked to hold that, after distinguishing between city and village in several consecutive acts, the Legislature in every instance meant to include "village" within the term "city."

It has long been the rule that: It is a general principle of interpretation that the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius. Under this principle the enumeration of certain powers implies the exclusion of all others not fairly incident to those enumerated and an affirmative description of cases in which certain powers may be exercised implies a negative on the exercise of such powers in other cases. Harrington v. Grieser, 154 Neb. 685, 48 N. W. 2d 753.

We conclude that section 12-215, R. R. S. 1943, means just what it says—"any city"—and does not apply to a "village."

We call attention to the fact that our Constitution recognizes that "villages" and "cities" are separate and distinct. Art. III, § 18; Art. VIII, § 1; Art. XI, §§ 2, 5, Constitution. Throughout the statutes, too numerous to cite, the Legislature has granted separate and distinct powers to villages and cities of various classes, and it has established different municipal organizations and imposed different limitations of powers. To hold that "city" and "village" mean one and the same thing in this instance could only be done for compelling reasons.

They do not exist here. A contrary conclusion is clearly indicated.

Finally the plaintiff argues that in the petition he did not allege that Eustis was a village, and that the court was required to go outside the record and take notice of the fact that Eustis was a village. Twice in the petition is an allegation concerning "the corporate limits of the Village of Eustis." Plaintiff argues that this is not an allegation that Eustis is a village instead of a city. Plaintiff was given 20 days to amend his petition had he been dissatisfied with the construction the court put upon it. He did not do so. The conclusion of the trial court appears to have been a rational one as to Eustis being alleged to be a village. If the plaintiff desired to contest that conclusion, he had ample opportunity to amend his petition in such a way as to clearly present the issue. The contention does not merit further discussion.

We affirm the judgment of the trial court.

AFFIRMED.