## BENJAMIN BEHA ET AL. V. STATE OF NEBRASKA.

FILED JANUARY 8, 1903.   NO. 12,718.

1. **Statutes: REPEAL BY IMPLICATION.** The repeal of a statute by implication is not favored, and it is only where two statutes relating to the same subject are so repugnant to each other that both can not be enforced that the last one enacted will supersede the former and repeal it by implication.

2. **Act of Legislature: FOOD COMMISSION.** The act of the legislature of 1899, entitled "Food Commission" (Compiled Statutes, 1901, ch. 33), does not by implication repeal the act of 1895 (Session Laws, ch. 78), entitled "An act concerning imitation butter and imitation cheese," etc., or any part thereof; said last-mentioned act being incorporated into the 1901 Compiled Statutes as section 245$m^1$ *et seq.* of the Criminal Code.

Syllabus by court; catch-words by editor.

3. **Criminal Code:** VALID EXERCISE OF POLICE POWER. The act of 1895 (Criminal Code, section 245*m*, *et seq.*), forbidding the selling or keeping for sale "imitation butter" colored so as to resemble butter made from pure milk, or the cream thereof, and the other regulations imposed by the act, is a valid exercise of the police power of the state; and it is competent for the legislature to provide such regulations as therein prescribed and to enact suitable penalties for their violation, for the better protection of the public health, and to prevent fraud and deception.

ERROR from the district court for Lancaster county. Conviction of selling oleomargarine colored to resemble butter. Tried below before CORNISH, J. *Affirmed.*

*Henry H. Wilson* and *Elmer W. Brown,* for plaintiffs in error.

*Frank N. Prout, Attorney General, Norris Brown* and *William B. Rose,* for the state.

HOLCOMB, J.

The defendants in the trial court, who appear here as plaintiffs in error, were convicted of violating the provisions of section $245m^2$ of the Criminal Code (Session Laws, 1895, ch. 78, sec. 2). They were charged with having sold and with keeping for sale oleomargarine or imitation butter, colored to resemble butter made of milk and the cream thereof, the product of the dairy.

One of the grounds presented on which a reversal of the judgment of the lower court is asked is that the section on which the prosecution is grounded has no legal existence. It is argued that the provisions of the act of 1895 providing for punishment for selling or keeping for sale "imitation butter" colored so as to resemble the genuine article were repealed by implication by the passage of the act of 1899 entitled "Food Commission." Session Laws, 1899, ch. 35; Compiled Statutes, 1901, ch. 33. The substance of the argument is that by the latter act it was made lawful to sell imitation butter, even though colored to resemble the genuine article, which of necessity would repeal the

provisions of the former act making it unlawful to sell or keep for sale such product so colored to resemble the product of the dairy, because of the repugnance and inconsistency of the two acts. An examination of the acts of 1895 and 1899 compels the conclusion, we think, that there is no inconsistency or repugnancy between the two, and that the only bearing the latter has on the former is to require the dealer in "imitation butter," as therein defined, to take out a license or permit as an element of regulation before he is authorized to engage in handling the product by buying and selling the same.

The act of 1895 is "An act concerning imitation butter and imitation cheese, defining the same, prohibiting their being colored in semblance of butter, and cheese, regulating their manufacture, shipping and selling, and protecting the consumers at the table, and prescribing penalties for the violation thereof." By section 1 imitation butter is defined as every article, substitute or compound, other than that produced from pure milk or cream from the same, made in the semblance of butter and designed to be used as a substitute for the same, provided, it is said, the use of salt, rennet, and other harmless coloring matter for coloring the product of pure milk or cream shall not be construed to render such product an imitation. Section 2 declares that no person shall coat, powder or color with annatto or any coloring matter whatever any substance designed as a substitute for butter or cheese, whereby such substitute or product, so colored or compounded, shall be made to resemble butter or cheese, the product of the dairy, and provides a suitable penalty for its violation. It is also provided that this same section shall not be construed to prohibit the manufacture and sale, under the regulations provided for in the act, of substances designed to be used as a substitute for butter, and not manufactured or colored as therein prohibited. Briefly, then, the act of 1895 divides the product of the dairy, which we term "butter" and all substitutes thereof, such as oleomargarine, butterine, and "imitation butter," into two classes, with

restrictions and penalties attached for the purpose of prohibiting the substitutes from being colored so as to resemble the genuine article, and with certain regulations permitting the sale of the substituted article when sold for what it actually is, and not as genuine butter.

The act of 1899 creates a food commission and regulates the manufacture and sale of foods, including "imitation butter" and "imitation cheese," and dairy products, and provides for a system of reports, inspection, and the issuance of permits, fixing fees for the same, and providing penalties for a violation of the act. Compiled Statutes, 1901, ch. 33. By section 6 it is enacted that every person, firm or corporation who sells or offers for sale or has in his possession for sale, "imitation butter" in packages containing ten pounds or more, shall be deemed a wholesale dealer, and in packages containing less than ten pounds shall be deemed a retail dealer, in "imitation butter"; and by section 7 it is made unlawful for any wholesale or retail dealer in "imitation butter" to engage in the business of handling or having in his possession for sale or selling, "imitation butter," without first procuring from the food commissioner an annual permit, such permit describing the occupation and place of business of the person, firm, or corporation receiving the same, and conditioned on the faithful observance of the laws of the state by the recipient thereof. The latter act, it will be observed, in nowise affects the provisions of the former, nor the definitions as therein found by which to distinguish the dairy product from the substitutes; nor does it in terms directly or inferentially seek to make lawful the sale of "imitation butter" by securing a license or permit for the keeping or selling of the substitute, when compounded or colored, contrary to the provisions of the act of 1895, so as to resemble genuine butter. The latter act can be regarded only in the nature of an additional regulation, which requires the dealer of the substitute article to obtain a permit before engaging in the business, and leaves unaffected otherwise all of the provisions of the act of 1895.

It is not by the act first passed made unlawful for one to sell or keep for sale oleomargarine or imitation butter, when not colored for the purpose of making it resemble butter as made from pure milk and the cream thereof. The act of 1899 but provides that the dealer in "imitation butter," which may be sold under the regulations and in the manner prescribed by the first act, must submit to the additional regulation of securing a permit from the food commission before engaging in the business. It is said by this court that it is only where two statutes on the same subject are so repugnant to each other that both can not be enforced that the last one enacted will supersede the former and repeal it by implication. *State v. Moore,* 48 Nebr., 870. The rule is general that repeals by implication are not favored, and the statute will not be declared so repealed unless the repugnancy between the new statute and the old one is plain and unavoidable. *Albert v. Two-hig,* 35 Nebr., 563. We find no inconsistency or repugnancy in the two acts, and are therefore of the opinion that the act of 1899 does not by implication repeal the act of 1895, or any part thereof.

It is next argued that the provisions of the act of 1895 are unconstitutional, in that it deprives a person of his property without due process of law; that the whole purpose and effect of the act is to take value from one man's property and add it to the value of another's property. It is argued that in the absence of all constitutional restraints, the legislature can not take A's property and give it to B, and yet it is said this is clearly the purpose and effect of the law under which the defendants were convicted. Counsel argue on the proposition that the coloring matter which may be used to make genuine butter more attractive and salable is harmless in itself, whether used in the genuine article or the substitute; and that, therefore, it is unlawful to prohibit the dealer in imitation or substitute butter to use the same or similar ingredient to make his article of commerce likewise more attractive and salable; that, there being nothing deleterious to the

health in the coloring matter used, prohibiting its use in
the substitute can not be justified as a proper exercise of
the police power, and the only effect and purpose of the
legislation is to add value to the product of the dairy and
detract value from the substituted article, otherwise con-
ceded wholesome as a food product, and this it is incom-
petent for the legislature to do. To illustrate the argu-
ment, it is said a law which allowed the butter made from
the milk of a Jersey cow to be colored, and prohibited like
coloring of butter from the milk of the Holstein, or some
other breed of cows, would be clearly an unwarranted
exercise of legislative power. Counsel, we think, are not
fortunate in drawing their analogy. It is a matter of com-
mon knowledge that genuine butter is not always and at
all seasons of the year of the same color, but ranges from
almost white to a deep shade of golden yellow; that for
the sake of uniformity in color and for trade purposes,
harmless coloring is frequently used to give to the article
a shade of golden yellow resembling it in its natural state
in its most desirable color,—the rich yellow colored butter
that comes from the dairy in June time, when the cows
are browsing on the succulent green grasses of the prairies
and the rich red clover in the pastures. These tints and
shades of coloring in natural butter in nowise render it
deleterious to the health, or change it from its true and
genuine character as the natural product of the dairy,
made from pure milk and the cream thereof. The act of
1895 was designed to prevent fraud and deception, by ren-
dering it impossible, so far as legislation could do so, to
sell to the people and for table use, as for genuine butter,
an article made in imitation thereof which, correctly
termed, is but a substitute therefor.

It is contended that the provisions found in the act for
packing, wrapping and labeling the "imitation butter"
answer all purposes of regulation and are sufficient to
prevent imposition and deception in the sale thereof, with-
out the added provision making it unlawful to color it so
as to resemble butter. But certainly, because these other

means may be reasonably effective to accomplish the legislative purposes, considering them to be so, this of itself is no valid reason why other and more effective measures may not also be resorted to, to accomplish the desired object. The legislative intendment obviously was to prevent oleomargarine and other substitutes in imitation of butter from masquerading in the cloak of the genuine article, and thereby deceiving and defrauding the public. It is declared that the substituted article shall not be colored so as to resemble the product of the dairy, and this, it occurs to us, is one of the most effective means which could be adopted to prevent the sale of the substitute as and for the genuine article. The legislation is, we think, manifestly a legitimate exercise of the police power of the state, for the purpose of promoting the public health and welfare and to prevent the perpetration of fraud and deception on the public generally. Oleomargarine, or imitation butter, is recognized as a legitimate subject of commerce, to be dealt with under the regulations imposed by statute; but this fact does not by any means admit the proposition that such regulations are unnecessary in order that the public may properly be protected from imposition, or that the general health and welfare of the people does not require such regulations in order to insure the use of healthy and wholesome materials in the manufacture of such imitation butter. It will, we apprehend, be readily conceded that the opportunities for manufacturing an unwholesome article from unhealthy ingredients are very many, and the temptation to do so renders it the part of wisdom to regulate by legislation the manufacture and sale of the product. The legislation complained of can, we are satisfied, be justified both on the ground that it prevents fraud and imposition on the public by rendering it less probable that imitation butter can be disposed of as the genuine article, and also as a measure of regulation, with the view of controlling its manufacture and sale, so as to prevent the placing in the market and the sale to the

public generally of an unhealthy and unwholesome food product.

We do not wish to be understood as saying that as now manufactured the product is unhealthy and unwholesome, but only that it might be made so, and that regulative measures by way of legislation are permissible in order to avoid this undesirable condition. A law in substance quite similar to our own has been under consideration by the supreme court of Ohio. *State v. Capital City Dairy Co.,* 62 Ohio St., 350. It is there held to be a valid exercise of the police powers of the state. It is held in the syllabus that the police power of the state is properly exercised in the prevention of deception in the sale of dairy products and in the protection of the health of the public; that the several acts of that state on the subject, the purpose of which, it is said, is to prevent deception in the sale of dairy products and to preserve the public health, are a reasonable exercise of the police power and do not contravene any section of the constitution. The case was appealed to the supreme court of the United States, and the judgment of the state court upheld. *Capital City Dairy Co. v. Ohio,* 22 Sup. Ct. Rep., 120. In the opinion of the state supreme court it is said (p. 363) : "At the outset it should be understood that the statutes do not undertake to prohibit the manufacture or sale of oleomargarine; on the other hand their expressed purpose, gathered from text and title as well, is to regulate its manufacture and sale. In substance they provide that no one shall manufacture for sale any article in imitation of butter, or any compound or substance or any human food in imitation or semblance of natural butter which is not pure butter; that no one shall manufacture or offer or expose to sale any oleomargarine which contains any coloring matter; that no one shall sell any substance purporting, appearing or represented to be butter or having a semblance of butter, unless it be under its true name and with proper mark designating such name, and that all persons dealing in food shall, upon proper application and tender of price, furnish a sample suitable

for analysis. Construed with that part of section 2 of the act of March 7, 1890, which provides that oleomargarine may be manufactured 'in a separate and distinct form, and in such manner as will advise the consumer of its real character, free from any coloring matter or other ingredient, causing it to look like, or appear to be butter,' it becomes entirely manifest that this legislation is regulation, not prohibition. * * * This court has held again and again that the police power of the state is properly exercised in the protection of the people in all matters concerning their health, and that it is within the scope of this power to regulate the manufacture and sale of articles of food even though the right to so manufacture and sell is a natural right guaranteed by the constitution. Conceding that where the pursuit rests upon natural right, and the product is not harmful, this power may not be exercised in a way which will result practically in inhibition, though under the guise of regulation, and in fostering the interests of a rival product; yet, where the manufacture is conducted in such a way as is calculated to deceive, lead the buyer to suppose he is purchasing an article of food which is everywhere recognized as wholesome, and especially where the article sought to be regulated may easily be manufactured so as to be harmful, and thus result in fraud upon and injury to the public, the police power is properly exercised in the regulation of the manufacture and sale of such article by such requirements as will tend to insure the public against fraud and injury." And further on it is observed: "In order to avoid misunderstanding it may be well to here repeat what substantially appears elsewhere, that there is no inhibition, under the laws of Ohio, of the manufacture or sale of oleomargarine. The requisite simply is that it shall purport to be what it really is, and shall not be so manufactured and put up as to deceive the consumer." To the same effect may be cited: *State v. Marshall,* 64 N. H., 549; *State v. Addington,* 77 Mo., 110; *Powell v. Commonwealth,* 114 Pa. St., 265; *Butler v. Chambers,* 36 Minn., 69; *Weideman v. State,*

56 N. W. Rep. [Minn.], 688; *Waterbury v. Newton,* 21 Vroom [50 N. J. Law], 534; *McAllister v. State,* 72 Md., 390; *People v. Arensberg,* 105 N. Y., 123; *Plumley v. Massachusetts,* 155 U. S., 461.

The conclusion we reach is that the section of the act of 1895 which is complained of comes within the proper scope and power of the lawmaking branch of the state government, and that it is competent for the legislature to provide for the regulations imposed by it on those engaged in the buying and selling of imitation butter, for the better protection of the public health, and to prevent fraud and deception; and also to provide proper penalties for a violation of such regulations. The judgment of the district court should be, and accordingly is, in all things

AFFIRMED.