STATE, EX REL. JOHN J. LEDWITH, RELATOR, V. E. M.
SEARLE, JR., AUDITOR, RESPONDENT.

FILED MAY 24, 1907.   No. 15,183.

1. **Colleges and Universities:** UNIVERSITY FUND: STATUTES: REPEAL.
   That part of section 19, ch. 87, Comp. St. 1905, which provides
   that in the year 1899, and annually thereafter, a tax of one
   mill on the dollar shall be levied on all of the taxable property
   in the state, the proceeds to constitute a fund for the mainte-
   nance of the university, was not repealed by implication by
   the revenue law of 1903.

2. **States:** APPROPRIATIONS. The act of the legislature passed and
   approved April 4, 1907, appropriating the proceeds of said tax
   for the years 1907 and 1908, and so much of the proceeds of
   the one mill tax for the years 1905 and 1906, not heretofore
   appropriated, to the use of the state university for the biennium
   ending March 31, 1909, amounts to a specific appropriation within
   the meaning of section 22, art. III of the constitution.

3. ———: ALLOWED CLAIMS: PAYMENT. When the auditor of public
   accounts has duly audited and allowed a claim payable out of
   the said fund, and there is an unexpended balance therein of a
   sufficient amount, it is his duty to draw a warrant therefor
   in favor of the claimant, although there may be no money
   actually in the treasury belonging to said fund.

ORIGINAL application for a writ of mandamus to compel
respondent to issue a warrant in payment of a claim
payable out of the temporary university fund.  *Writ al-
lowed.*

*Clark & Allen,* for relator.

*W. T. Thompson, Attorney General,* and *W. B. Rose,*
contra.

BARNES, J.

This is an original application for a writ of mandamus.
The facts stated in the petition of the relator are sub-
stantially as follows: The respondent is the duly elected
and qualified auditor of public accounts of the state of
Nebraska. By section 19, ch. 87, Comp. St. 1905, it is

provided that in the year 1899, and annually thereafter, a tax of one mill upon the dollar shall be levied on all taxable property in the state, the proceeds to constitute a fund to be expended under the directions of the regents of the university of Nebraska, for the maintenance of said university, and for buildings and improvements. That, pursuant to this statute, the board of equalization has each year levied a tax of one mill on the dollar upon the grand assessment roll of the state for said purpose. To make the proceeds of said one mill tax available, the legislature on the 4th day of April, 1907, duly passed an act appropriating the proceeds thereof for the purposes specified in section 19, ch. 87, *supra,* which act was duly approved by the governor on April 9, 1907, and section 1 of said appropriation act reads as follows: "The proceeds of the one mill university tax for the years 1907 and 1908 and so much of the proceeds of the one mill tax for the years 1905 and 1906 as was not appropriated at the last session of the legislature are hereby appropriated for the biennium ending March 31, 1909 to the use of the state university for current expenses, buildings and permanent improvements, as directed in section 19, chapter 87, Compiled Statutes of Nebraska of the year 1905." (Here follows an estimate of the principal items of expenditure.) "The foregoing are estimates for the information of the legislature. The enumeration shall not preclude the regents from using more for one item and less for another if in their judgment it becomes necessary." Laws 1907, ch. 151, sec. 1. On April 26, 1907, the relator presented to the respondent a certificate of the board of university regents, executed by its president and secretary, as required by law, which certificate recited that the relator was entitled to $25 for services rendered for the university as instructor in the biennium, beginning April 1, 1907, and payable from the temporary university fund; that the respondent examined and allowed the claim, but refused to issue a warrant to the relator therefor, on the sole ground that a sufficient amount of taxes had not been paid

State v. Searle.

into the state treasury with which to pay said claim. Relator further alleges that the assessed value of real estate fixed by the state board of equalization in the year 1904, and in force until the year 1908, is $185,790,126, and the one mill tax aforesaid will therefore produce in the biennium $371,580.26, against which no warrant has been drawn; that the assessment of personal property for the year 1907 has not yet been made, and the relator is unable to state at this time what the entire assessment roll will be, but the assessed valuation of taxable property in 1905 was $304,470,961, and in 1906 was $313,060,301; that the legislature of 1905 appropriated from the one mill levy for that year the sum of $558,000 for the use of the university as aforesaid, leaving a balance of $28,000 in said fund unappropriated; that under the provisions of sections 1-3, ch. 93, Comp. St. 1905, it is the duty of the state treasurer to register state warrants in the order of presentation when the funds in the treasury are insufficient to pay the same; that by reason of this provision it is the duty of the auditor to issue warrants against the appropriation, whether or not the taxes are actually collected at the time the warrant is applied for; that the relator is therefore entitled to a warrant for his said claim, regardless of the fact that the proceeds of the one mill tax above mentioned has not been collected and paid into the state treasury.

To this petition the respondent has filed a general demurrer, thereby admitting the facts above recited, and upon the issue of law thus raised the question involved in this controversy is to be determined.

The respondent contended upon the hearing that there is no fund provided by law against which the warrant sought to be obtained by the relator can be drawn; that there is no law in force requiring the one mill levy, which is mentioned in the relator's petition to be made, because that part of section 19, ch. 87, Comp. St., which provides for such a levy was repealed by implication by section 134,

art. I, ch. 77 of the general revenue law, 1903, as it now appears in the Compiled Statutes. It is a universal rule that repeals by implication are not favored, and it is only when two statutes relating to the same subject are so repugnant to each other that both cannot be enforced that the last enactment will be held to supersede the former and repeal it by implication. *Beha v. State*, 67 Neb. 27. Again, all statutes should be so construed, if possible, as to give effect to every provision thereof, and an act should not be placed in antagonism with another act unless such was the manifest purpose and object of the legislature.

Having in mind these well-established rules, we come now to consider the two provisions of our statutes which bear upon the subject under consideration. Section 19, ch. 87, Comp. St. 1905, provides, among other things, as follows: "The temporary university fund shall consist of the proceeds of investments of the permanent fund; * * * and a tax of one mill upon the dollar of valuation of the grand assessment roll of the state, which tax shall be levied in the year 1899 and annually thereafter. All moneys accruing to this fund are hereby appropriated for the maintenance of the university including buildings and permanent improvements and the same may be applied by the board of regents to any and all university needs." And the board of equalization since the year 1899 has each year levied the one mill tax above specified according to the provisions of the statute just quoted, and each legislature since that year has appropriated the proceeds of that tax to the use of the university. Section 134, art. I, ch. 77, of the general revenue law, 1903, reads as follows: "The state board shall determine the amount of all taxes required for state purposes, and the rate of taxation upon all property in the state necessary to raise the same, and make the levy of such taxes throughout the state. The rate of the general state tax shall be sufficient to realize the amount necessary to meet appropriations made by the legislature for the year in which the tax is levied, and an

additional sum not exceeding twenty per cent. of the amount of any existing state indebtedness, and not exceeding in all five mills on the dollar valuation. The rate of the state school tax shall not be less than one-half mill nor more than one and one-half mills on the dollar valuation." There does not appear to be any repugnancy between the statutes quoted. One contains a provision allowing the state board to levy a five mill tax, if necessary, for the state general fund, and one and one-half mills for the common school fund, while the other specifically directs the board to make a levy of one mill for the support of the state university. Both statutes can be enforced, therefore one of them does not repeal the other by implication. Again, a special statute relating to a particular subject will not ordinarily be held inconsistent with a general enactment that, but for the special statute, would have included the subject matter of the latter. In such a case the general act operates according to its terms on all the subjects embraced therein, except the particular one which is the subject of the special act, and this is so whether the general and special provisions are contained in the same statute or in independent acts adopted at the same or different times. *Kountze v. Omaha*, 63 Neb. 52. Applying the foregoing rules to the facts in the case at bar, there seems to be no escape from the conclusion that the statute providing for the special one mill levy for the temporary university fund is in force, notwithstanding the section of the general revenue law above quoted.

It is contended, however, that there may be no fund provided for the payment of the claim in question because the state board of equalization may not levy the university tax. This contention hardly merits our consideration. The law presumes that officers will perform their duties, and it is not to be believed that the state board will refuse or neglect to make the levy in question; and, if they should do so, they may be coerced by the courts to perform that duty.

It is contended, however, that the appropriation in question is not a specific appropriation, and therefore is in conflict with that part of section 22, art. III, of the constitution which provides: "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law." As we understand the respondent's contention on this point, it rests on the proposition that the amount of the one mill levy is indefinite and uncertain because the amount of the grand assessment roll for the years 1907 and 1908 is still undetermined. A like question was before us in the case of *State v. Babcock*, 24 Neb. 787. It appeared in that case that the legislature of 1887 passed an act providing for the sale of lots and lands belonging to the state in the city of Lincoln; and it was further provided in said act: "The amount derived from the sale of said lots and lands is hereby appropriated out of the capitol building fund to aid in the completion and furnishing of said capitol building." Laws 1887, ch. 85, sec. 5. The lands and lots were sold, and the amount of the sale was $78,878, part in cash and the remainder in notes due in one and two years. In holding the act to be the appropriation of said entire sum, the court said: "The evident design of the legislature was that this fund should be available as soon as a sale of the lands and lots mentioned took place. The fact that a short credit was to be given each purchaser if he so desired, does not nullify the appropriation. The amount of the sales, being $78,870, was appropriated and made available for the purposes for which it was intended. If the whole amount is not in the treasury the statute has provided that the holder of a warrant shall be entitled to interest thereon when it is presented to the treasurer and not paid for want of funds. This being an absolute appropriation of the amount of the sales of the lots and lands referred to, and a large part of this being still unexpended, it follows that the relator is entitled to the writ." In commenting on that decision in a later opinion in which the subject of appropriations was ex-

haustively considered, it was said: "An appropriation may be specific, according to any of the definintions heretofore given, when its amount is to be ascertained in the future from the collection of the revenue." *State v. Moore,* 50 Neb. 98.

In the case at bar the amount of the grand assessment roll determines the amount of the appropriation because the rate of taxation is fixed by the statute at one mill on the dollar valuation. What the grand assessment roll will be is not now ascertained, but it will be determined before the money is expended; and this much is certain— the fund will be many times greater than the amount of the relator's claim. Again, the value of the real estate in this state fixed by the state board of equalization in 1904, operative until 1908, is $185,790,000. This will produce for the current year a fund amounting to $185,-790. So it is unnecessary to determine now how much will be added to the grand assessment roll by the valuation of personal property. The same question was before the supreme court of Illinois in *People v. Miner,* 46 Ill. 384. The Illinois legislature, under a constitutional provision similar to our own, appropriated the proceeds of a certain tax for a specific purpose. The act was vigorously attacked on the ground that the appropriation was not specific within the meaning of the constitution. The court said: "There is nò force in the objection that the appropriation is for no certain amount. * * * It is not essential or vital to an appropriation that it should be of an amount certainly ascertained prior to the appropriation." To our minds the case at bar is one which calls for the application of the maxim: "That is certain which may be rendered certain." See *Weston v. Herdman,* 64 Neb. 24. In this case the appropriation is certain because it can be made certain. No matter what the valuation of the grand assessment roll may be, the rate of taxation is fixed, and it is merely a question of computation to determine what the tax will yield; and the only concern of the respondent should be to see to it that warrants are not

drawn against the fund thus appropriated in excess of the actual amount thereof now known or to be hereafter ascertained.

Lastly, it is contended that no warrant can be drawn on the fund in question because there is no money in the treasury with which to pay the same. It was well understood by the legislature, and is a matter of common knowledge, that it may often happen that there are no funds actually in the treasury belonging to a specific appropriition, against which warrants can be drawn. And so it was provided by sections 1-3, ch. 93, Comp. St. 1905, that it is the duty of the state treasurer to register warrants in the order of their presentation, when there is no fund in the treasury with which to pay them; and, when a fund is provided for a certain purpose, warrants may be drawn against that fund, whether it is actually in the treasury or not, so long as the warrants drawn do not exceed the amount of the appropriation. If this could not be done the business of the several departments of the state would often be seriously interfered with, and in many instances would have to cease altogether.

So we are of opinion that it is the duty of the respondent to issue a warrant to the relator in payment of the claim in question in this case, and the writ will be issued accordingly.

WRIT ALLOWED.