CONTINENTAL INSURANCE COMPANY, APPELLEE, V. CHARLES SMRHA, DIRECTOR OF DEPARTMENT OF INSURANCE, ET AL., APPELLANTS: CAPITAL FIRE INSURANCE COMPANY, ET AL., INTERVENERS, APPELLEES.

FILED DECEMBER 11, 1936. No. 29874.

*William H. Wright,* Attorney General, and *Daniel Stubbs,* for appellants.

*Kenneth S. Finlayson, Jackson B. Chase, Chambers & Holland, Allen, Requartte & Wood, Mockett & Finkelstein, Arthur C. Pancoast, Arthur F. Mullen* and *Paul P. Massey, contra.*

*Rosewater, Mecham, Shackelford & Stoehr* and *Seymour L. Smith, amici curiæ.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

CARTER, J.

This is a suit in equity to enjoin the director of insurance and the treasurer of the state of Nebraska from enforcing the provisions of chapter 99, Laws 1935, for the reason that the act is unconstitutional. The trial court held the act to be unconstitutional and appellants thereupon perfected their appeal to this court.

The act in substance provides that every fire insurance company now or hereafter engaging in or carrying on business in this state shall pay to the state treasurer annually a tax equal to 2 per cent. of the gross fire premium receipts, after deducting return premiums and considerations paid for reinsurance, on all fire premiums collected on policies of fire insurance on properties situated within the corporate limits of all incorporated cities and villages in the state during the year next preceding as shown by their annual statement. The act further provides that no certificate shall be issued to any such company authorizing it to do or continue in business in this state while any such tax remains due and unpaid. The balance of the act provides for the distribution of the funds collected to cities and villages maintaining a fire-fighting organization in proportion to their populations, for the relief of sick, injured or disabled firemen.

Appellees contend that the act is violative of section 1, art. VIII, and section 18, art. III of the Constitution. That part of section 1, art. VIII, that is material here provides as follows: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property."

That part of section 18, art. III, to which reference is made is as follows: "The legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted."

It will be noticed that the tax in question is levied upon fire insurance companies writing fire insurance policies on properties within the corporate limits of all incorporated cities and villages in the state. The inquiry at once presents itself as to the reason for the distinction or difference here made by which a certain class, from all those directly concerned in the subject-matter, is segregated, and upon that class the burden of the tax laid, while no such tax is laid upon others likewise concerned. An examination of the act leads us to believe that the only basis for the classification is the fact that fire insurance companies derive a direct benefit from the maintenance of fire-fighting departments, companies or organizations by the incorporated cities and villages of the state. Does such a classification for taxation purposes comply with the uniformity provisions of our state Constitution?

There can be no question that fire insurance companies derive benefit from the maintenance of fire-fighting departments in our incorporated cities and villages, even though such benefits may be reflected in the insurance rates charged in those localities. The evidence shows, however, that persons owning property within the corporate limits of our cities and villages who carry no fire insurance are also benefited as much, if not more, than an insurance company. The evidence also shows that property owners who are insured for less than the full value of their property are also directly benefited. The property of the state, county and municipality located within the corporate limits of cities and villages also receive direct benefits. In addition to all this, the public generally is benefited by the protection afforded from large conflagrations which not only damage

and destroy property but also subject the public itself to injury and death. There can be no question that the duty of a fire department is the same towards all combustible property within the municipality. It owes no greater duty towards property insured for its full insurable value than it does to property that is only partly insured or not insured at all. This subject is well stated in *Lowry v. City of Clarksdale,* 154 Miss. 155, 122 So. 195, wherein the court said:

"If then the legal duty of the fire-fighting department is as much owed towards uninsured property as towards that which is insured, and if, as we know, the personal element in an extreme emergency would favor the uninsured, it must be obvious that the answer above adverted to becomes no answer at all in point of substantial reason for the attempted distinction or classification; and no other answer as good as that mentioned has been advanced. For instance, among these answers it is in effect argued that although the duty to all species of combustible property insured and uninsured is the same, yet there is in the status of owners as owners, as distinguished from insurers as such, a sufficiency of distinction that upon this difference in status the classification may be legally upheld. It is true that such a difference might serve for a classification for some purpose, but the argument and every similar argument overlooks the requirement that the reason upon which the classification is grounded must be a reason which has a just and substantial relation to the particular object to be accomplished—an object which is a public one, for it is fundamental that no tax may be laid to raise funds for a mere private or personal purpose. The contemplated public object to be accomplished here is the improvement of the service in the fire-fighting department, and since that improvement moves in its benefits and advantages as much and in exactly the same way towards the uninsured owner of property of a certain value as it does towards an insurance company carrying a policy in an equal amount in value on another piece of property, there is no actual difference between the two in relation to the object to be ac-

complished. And every argument advanced to sustain this tax runs likewise into a corner.

"Under those arguments, if the tax here in question may be imposed upon fire insurance companies, then upon like principles it may be extended and these companies could be required to pay the entire expense of a city fire department, and by a parity of reasoning there could be added all the costs of construction, extension, and operation of the water-works department, since a modern fire-fighting department is essentially dependent upon an adequate water supply. By like, or even better, reasoning, the banks and jewelers of a city could be required to pay the entire costs of the police department on the grounds that banks and jewelry stores are distinct beneficiaries of police protection against burglaries and robberies; and so on as to many other features of municipal administration."

In *State v. Merchants Ins. Co.,* 12 La. Ann. 802, the court in a like case said: "But in the case before us there is no property improved or assessed; all is conjectural and arbitrary; one class of corporations is taxed an invariable sum for the benefit of another class; there is no possibility of ascertaining whether the tax is a *quid pro quo;* the fire companies are not compelled by the law to do anything for the insurance companies; a bounty is secured to the fire department by confiscating the money of the defendants, without providing that any service shall be rendered to the defendants by the fire department; and even if this could, for a moment, be regarded as an assessment for benefits conferred, its inequality is glaring; every owner of buildings and other combustible property in New Orleans, who is either wholly or in part his own underwriter, is presumed to be benefited by the fire department in the same way as the insurance companies are. Why should the companies alone pay taxes for this common benefit? Again: large amounts of property in New Orleans are insured abroad in offices which have no public agencies here; those offices are likewise as much benefited by the fire department as the New Orleans offices are; and yet they can be made to pay

no tax under this law which is personal to the companies domiciled or represented in New Orleans:"

In *State v. Hall*, 129 Neb. 669, 262 N. W. 835, this court has recently said: "The legislature may make a reasonable classification of persons, corporations and property for purposes of legislation concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated."

The record conclusively shows that the classification attempted on the basis of benefits received and objects to be accomplished does not rest upon any real differences in situation and circumstances from others within the class. In the absence of some real and substantial distinction which bears a reasonable, just and proper relation to the objects sought to be accomplished, a tax levied upon a part of those within the same class cannot be sustained. The classification and the object to be accomplished must be germane.

We necessarily conclude that the classification made on the basis of benefits derived from the purpose for which the tax fund was appropriated does not meet the requirements of uniformity as to class required by section 1, art. VIII, and section 18, art. III of the Constitution.

The principal contention of the appellants, however, is that the inclusion in the act of the provision that "no certificate shall be issued to any such company, authorizing it to do or continue in business in this state while any such tax remains due and unpaid" makes the tax a franchise or privilege tax, and that, as such, it meets constitutional requirements. It is the settled law that a state may, subject to constitutional restrictions, tax a foreign corporation for the privilege of doing business within the state. 61 C. J. 340.

In *Equitable Life Assurance Society v. Thulemeyer*, 52 Pac. (2d) (Wyo.), 1223, the court held that such a provision in a similar act constituted the tax a privilege or franchise tax.

In *Pittsburg Life & Trust Co. v. Young,* 172 N. Car. 470, 90 S. E. 568, the court said: "It is well settled, then, that a tax for the privilege of carrying on business in a state, or a franchise tax, may be imposed by the latter upon a foreign corporation, and the amount of it may be fixed on the basis of a percentage of its gross receipts from business or property, provided the business is transacted in the state from which receipts are derived or the property is located there. *So. B. and L. Ass'n v. Norman,* 98 Ky. 294. (s. c., 31 L. R. A. 41; 56 Am. St. Rep. 367, and note at p. 374) ; *Pacific Exp. Co. v. Seibert,* 142 U. S. 339."

In *State v. Continental Ins. Co.,* 67 Ind. App. 536, 116 N. E. 929, the court said: "The primary purpose of said section 10216, *supra,* is to raise revenue. It is based on the theory that a foreign fire insurance company permitted to come into the state should contribute to the public revenue in proportion to the benefits actually received. The plan is eminently fair and just. Part of the penalty provided for nonpayment of this tax is the revocation of the license to do business within the state. These statutes are interrelated and should be construed together. The one provides for the entrance of a foreign fire insurance company into the state, and the other for its expulsion therefrom. The tax may properly be called a graduated privilege tax. It is a semi-annual tax imposed upon a foreign corporation for the privilege of exercising its corporate franchises and carrying on business in a corporate capacity within the state. The consideration for the tax is the insurance business done within the state during the six months, ascertained at the expiration of that period and expressed in the gross amount of premiums received."

We therefore conclude that the tax in question is a privilege or franchise tax. In view of the result arrived at in this opinion, we will not discuss the effect of the inclusion of domestic and nonincorporated fire insurance companies within the class upon which the franchise or privilege tax was to operate.

It must be borne in mind that the corporation franchise

tax involved in the case at bar is not a property tax but an excise levied upon the privilege of doing business in the state and may therefore be computed according to any method the legislature may see fit to adopt, provided that constitutional requirements of equality and uniformity are not violated. A statute imposing such a tax which applies equally to all corporations in like conditions and makes a reasonable and not a purely arbitrary classification meets constitutional requirements. As we have stated, the tax is levied upon the privilege of doing business in the state and the validity of the excise is in no way dependent upon the purpose for which the fund thus collected is used. In other words, all corporations of the same class seeking the privilege of doing business in the state are entitled to equal treatment.

In the case at bar it will be noted that the tax in question is levied against all fire insurance companies desiring to do or to continue in business in this state. This in itself is certainly a proper classification, but, in the computation of the tax, all fire insurance companies seeking the privilege of doing business in the state are not treated equally or uniformly. It will be noted that the tax of 2 per cent. is upon premiums collected upon policies of fire insurance written upon properties within the corporate limits of cities and villages. The evidence shows that many insurance companies operate primarily within cities and villages, while others devote the greater part of their activity in rural districts of the state. The record also discloses that most fire insurance companies write insurance in both the rural districts of the state and in the incorporated cities and villages thereof in varying proportions. Can it be said that a privilege tax that requires a fire insurance company doing business in cities and villages to pay 2 per cent. of the premiums collected for policies written on urban properties, while the company writing insurance on rural properties only is not subject to any tax, is equal and uniform? We fail to see any reasonable basis for the distinctions thus made. The tax before the court is state wide in its operation

and the limitations of the provisions of the act to those companies writing policies of fire insurance on urban properties is without the differences of situation and circumstance that are required to uphold the levy of the tax against a part of the class upon which it was to operate in view of the object to be obtained.

In *State v. Pierce Petroleum Corporation*, 318 Mo. 1020, 2 S. W. (2d) 790, the court said: "The tax is not a property tax, but an excise levied upon the privilege of transacting business in this state as a corporation. *State v. Tax Commission*, 282 Mo. 213, 221 S. W. 721. It may therefore be computed according to any method the legislature sees fit to adopt. That method may or may not take into consideration the value of the privilege taxed. It is only necessary that the resulting tax be not obnoxious to the constitutional requirements of uniformity and equality. 2 Cooley on Taxation (4th ed.) sec. 860. And those requirements are fully satisfied if the statute imposing the tax applies equally to all corporations in like conditions, and makes a reasonable and not a purely arbitrary classification. *City of St. Charles v. Schulte*, 305 Mo. 124, 264 S. W. 654; *Witham v. Stewart*, 129 Ga. 48; *Wheeler v. Weightman*, 96 Kan. 50; *Knoxville & O. R. Co. v. Harris*, 99 Tenn. 684."

That part of section 18, art. III of the Constitution, hereinbefore quoted, is applicable to the case before us. "A law, which is general and uniform throughout the state, operating alike upon all persons and localities of a class, or who are brought within the relations and circumstances provided for, is not objectionable as wanting uniformity of operation." *State v. Berka*, 20 Neb. 375, 30 N. W. 267. It necessarily follows that a law is not general but special which does not operate uniformly upon the class within the relations or circumstances provided for.

This court has recently held that section 18, art. III, prohibits the legislature from passing legislation which does not operate equally and uniformly upon all members of the class brought within its operation. *State v. Hall, supra; Petersen Baking Co. v. City of Fremont,* 119 Neb. 212, 228

N. W. 256; *Speier's Laundry Co. v. City of Wilber, ante*, p. 606, 269 N. W. 119. If the tax before us is a privilege tax, and we think it is, the class attempted to be taxed is all fire insurance companies desiring to do business within the state of Nebraska. The legislature having failed to legislate uniformly upon the class designated, the act is violative of section 18, art. III of the Constitution.

Appellees contend that the act is violative of other constitutional provisions which will not be considered in view of the result at which we have arrived.

The judgment of the district court is correct and is

AFFIRMED.

ROSE, J., not participating.

GOOD, J., participating on briefs by stipulation.