THEODORE THORIN ET AL., PLAINTIFFS, V. ALLEN G. BURKE, DEFENDANT.

18 N. W. 2d 664

FILED MAY 11, 1945. No. 31505.

*Wear, Boland & Nye* and *Paul F. Good,* for plaintiffs.

*Walter R. Johnson, Attorney General, Rush C. Clarke* and *Edwin Vail,* for defendant.

*Leonard A. Flansburg* and *Perry, Van Pelt & Marti, amici curiæ.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an original action brought under the Uniform Declaratory Judgments Act approved April 24, 1929, appearing in sections 25-21,149 to 25-21,164, R. S. 1943.

Declaratory judgment proceedings have frequently been employed to determine questions as to the construction or validity of statutes. 16 Am. Jur., sec. 24, p. 296. See *Dill v. Hamilton,* 137 Neb. 723, 291 N. W. 62, 129 A. L. R. 743; *Lynn v. Kearney County,* 121 Neb. 122, 236 N. W. 192.

The action is for a construction of that portion of the regulations adopted as to imitation butter in the year 1931. Laws 1931, ch. 131, secs. 1 to 16, pp. 365 to 370; R. S. 1943, 81-294 to 81-2,110. The following facts are admitted by the pleadings: The plaintiff is a resident of Omaha, engaged in the retail grocery business, and the defendant is director of the Department of Agriculture and Inspection of Nebraska. The case proceeds with the present incumbent official substituted for the original defendant, as provided for by section 25-322, R. S. 1943. The plaintiff's customers have sought to purchase from him oleomargarine, hereinafter called margarine, manufactured principally from vegetable oils, and the same product containing less than 50 per cent animal fats and containing imported oils or fats; that the plaintiff wishes to sell, in the state of Nebraska, margarine the fat or oil of which is derived wholly from domestic vegetable sources, and margarine the fat or oil of which is derived in part from vegetable sources, and in part from animal sources, but in which the animal fats or oils are less than 50 per cent of the total fats and oils, and less than 50

per cent of the total content of such margarine; and margarine made in whole or in part from imported vegetable fat or oil.

Defendant's amended answer denies the plaintiff sold margarine containing imported oils or fats to his customers in this state for many years prior to 1931; denies that he proposes to purchase and to sell to his customers margarine made in whole or in part from imported vegetable oil or fat; denies that large quantities of margarine containing imported oils or fats were sold in Nebraska prior to the enactment of the act or that the sale of such product containing imported oils or fats practically ceased after the enactment of the statute; or that the statutory tax of 15 cents per pound imposed by the act has rendered impossible the sale of margarine containing less than 50 per cent of animal oils or fats produced in the United States and vegetable oil margarine and margarine containing imported oils or fats in competition with the tax-free margarines, which contain more than 50 per cent of animal oils or fats produced in the United States and which contain no imported oils or fats.

The act is designated, "An Act relating to revenue; to impose a tax upon imitation butter, intended for commercial or domestic consumption; * * * ." The act, on its face, is an act for levying taxes, and its primary object must be assumed to be the raising of revenue. Section 1 of the act provides; "There is hereby levied and assessed and shall be collected and paid to the Department of Agriculture of the State of Nebraska, prior to or at the time of the sale and delivery by any retail dealer or any agent or employee thereof, upon all imitation butter, a tax of fifteen cents per pound or fractional part thereof, * * * . For the purpose and within the meaning of this act every edible article, substitute or compound other than that entirely produced from pure milk or cream from the same, made in the semblance of butter, or containing any oil or fat other than the fatty constituent of cows milk intended or designed to be used as a substitute for butter, is hereby declared to be 'imitation butter'; provided, any oleomargarine or imitation butter containing

more than 50% of animal fats or animal oils produced in the United States and containing no imported oils or fats, for the purpose of this Act shall not be included in the term imitation butter for tax purposes. * * * ."

This case does not present the question that the difference between butter and imitation butter, that is, margarine, is or is not sufficient to justify their separate classification for purposes of taxation, nor is there any question but that the state has a right to regulate the sale of imitation butter, and this right has been recognized and upheld in this state. In this connection, in *Beha v. State,* 67 Neb. 27, 93 N. W. 155, the act prohibited the sale or keeping for sale, imitation butter colored so as to resemble butter made from pure milk or the cream thereof. The statute did not undertake to prohibit the manufacture or sale of margarine, on the other hand, the express purpose was to regulate its manufacture and sale. In this connection, the police power of the state is properly exercised in the protection of the people in all matters concerning their health, and that it is within the scope of this power to regulate the manufacture and sale of articles of food even though the right to so manufacture and sell is a natural right guaranteed by the Constitution. The requisite simply is that it shall purport to be what it really is and shall not be so manufactured and put up as to deceive the consumer.

In the case of *Carolene Products Co. v. Banning,* 131 Neb. 429, 268 N. W. 313, section 81-1022, Comp. St. 1929, commonly called the "filled milk" act, was held invalid as being an arbitrary and unreasonable regulation of a lawful occupation in so far as it prohibits the manufacture, sale and distribution of a food product composed of evaporated skim milk and cocoanut oil, both of which are wholesome and nutritious. Paragraph 4 of the syllabus held that the remedy for fraud in the sale of a wholesome and nutritious food product is by legislative regulation and not by a destruction of the business. This case recognized the power of the legislature to regulate imitation or substitute foods, and to so deal with them in such manner as to protect the health

and safety of the public. It is the duty of the legislature to use its judgment in exercising police powers of the state. The presumption is that any such law enacted by it is constitutional and it is only when the courts determine that an enacted law invades personal and property rights protected by the constitution that it will not be sustained.

In this case, the plaintiff's contention is that the act constitutes an arbitrary classification of and a discrimination between margarine without a reasonable basis of distinction, and that is the issue we determine in this opinion. The testimony is by depositions.

Margarine is entirely a product of the laboratory and factory. Oleomargarine, or margarine as it is commonly called, is an edible fat product made by churning or emulsifying into 80 parts of edible food fat, 20 parts of cultured milk. There are usually incorporated table salt, flavor and benzoate of soda, and into the fat portion there are frequently incorporated one or more of the following: Vitamin A, Vitamin D and soya bean lecithin or some other emulsifying agent.

At the time the act was passed, several different kinds of margarine were produced in the industry; margarine, the fat or oil of which is derived wholly from domestic vegetable sources; margarine, the fat or oil of which is derived principally from domestic sources but which contains less than 50 per cent of animal fats or oils; and margarine made in whole or in part from imported animal fats or oils. Under the act, all three of the foregoing are taxable. Margarine, the fat or oil of which is derived in part from domestic vegetable sources and in part from animal sources but in which the animal oils or fats are more than 50 per cent of the total oils and fats, is nontaxable.

In 1930 and early in 1931 imported vegetable oils constituted approximately 70 per cent of all of the oils and fats used in all of the margarine produced in the United States. Domestic vegetable oils constituted approximately 10 per cent of all the oils and fats used in all the margarine produced in the United States. Animal fats and oils consti-

tuted approximately 20 per cent of all the fats and oils used in all the margarines produced in the United States. The manufactured product of margarine, whether made from vegetable oils or fats, or animal oils or fats, contains 3300 calories to the pound, and fat soluble vitamins A, D and E. It is a fatty food consumed primarily for its energy or caloric value. In the manufacturing there are no essential differences between the classes of margarines, and in the finished product there is no difference whatever in the packing or distribution at all stages of the manufacture. The digestibility of margarine does not depend upon whether vegetable or animal fats are used, or whether there is a certain percentage of animal fats present, or whether domestic or foreign fats are used. There is no difference nutritionally between the margarine which is taxable under the act, and that which is not taxable.

The defendant offered evidence that in the manufacture of margarine from vegetable oils the process of hydrogenation is essential to change the oil which occurs in the form of a liquid, to a solid state. Although there is nothing deleterious to the health in the vegetable oils which are used in the manufacture of margarine, the resultant solid may have a melting point above body temperature, and in the process of digestion it may go through the entire alimentary system without particular change and without absorption. It having been admitted by the witness that the fats or oils which are the base of margarine carry certain solubles having a food value, it would seem to be at once apparent that this melting point would be of extreme value in determining the digestibility or the desirability of the use of margarine in the diet. This is based on the testimony of the witness that the difference between animal fats and vegetable oils is that the former is a solid and the latter is a liquid, and therefore in the using of vegetable oil alone, it is necessary to have it go through a process of hydrogenation. This process has the effect on the liquid vegetable oil to change the melting point and raise it until it is solid at ordinary temperature. The witness further explained that with the exception of

one or two of the imported oils, the animal fats are characterized by the amount of fatty acid known as palmitic acid, which occurs in the animal fats usually about 20 to 25 per cent, and with the exception of cottonseed oil and cocoanut oil, does not occur in vegetable oils in anywhere near this amount. Another characteristic fatty acid of animal fats is myristic acid which is present in animal fats usually in the proportion of 5 per cent, and few vegetable oils contain myristic acid.

Digestibility of fats, either animal or vegetable, is related to the melting point, and margarines are all made to melt in the mouth. The fat part of margarine is food at the temperature of the body, and fats in all foods at the temperature of the body are practically completely digested.

All classes of margarines are used for the very same purpose, as spread for bread, in cooking, baking and frying, and by appearance, use, odor or flavor, there is no apparent distinction between the different margarines, and the nutritive values of the different classes are not affected in any way by whether they are one type or another. True, in the original state, before the finished product is manufactured, there is a difference between vegetable oils and fats and animal oils and fats, as heretofore pointed out. In the manufactured product there may be a slight chemical difference which is not detectable, and we are here concerned with the finished product, and the defendant's witness admits this to be true when he testified the color, body, nutritional value and useability of the manufactured products of margarine are the same. The only qualifying statement is that there would still remain the chemical differences in composition in the finished product which were present in the raw materials from which the margarine was made.

Defendant cites *Coy v. Linder*, 183 Ga. 583, 189 S. E. 26, to the effect that it is proper to classify margarines as to their content and to impose a tax for revenue, as a regulation measure, upon one class and not upon another. In this case, an excise tax of 10 cents a pound was imposed on all margarine sold or offered for sale "containing any fat * * *

or oil ingredient other than any of the following fats and * * * oils: oleo oil from cattle, oleo stock from cattle, oleo stearine from cattle, neutral lard from hogs, peanut oil, pecan oils, corn oil, cotton-seed oil, soya bean oil or milk fat." Ga. Laws 1935, p. 81. The classification, for the purpose of imposing the excise tax, was held to be reasonable. However, in the testimony it developed that the elements composing a nontaxable oleomargarine were or could be raised in Georgia, and the development of their production would be beneficial to the state, and the testimony further showed that a substantial difference existed between the margarine of taxed and untaxed varieties in their spreadability, in nutrition, in their response to temperature, in their frying qualities, and their reaction to the taste. There is no such evidence in the instant case offered by the defendant, and the case, under the circumstances, is not authority in support of the classification here under consideration.

The defendant further cites *Carolene Products Co. v. United States,* 323 U. S. 18, 65 S. Ct. 1, 89 L. Ed. 13. This case upheld a federal Filled Milk Act. The defendant's contention is that where it becomes necessary and proper to examine extraneous evidence to determine the reasonableness or unreasonableness of the legislature's classification, the question is then a debatable one, and in such event is for the legislature and not the courts, and the action of the legislature should not be set aside by a finding of the court. The question in the instant case is not debatable in considering the manufactured product of margarines, for the reasons heretofore pointed out. The case is not applicable.

This brings us to an analysis, and the effect of the act here under consideration. A margarine containing 51 per cent of animal fats, and the balance containing domestic cotton-seed oil, is nontaxable. A margarine containing 51 per cent of animal fats and the balance imported cotton-seed oil is taxable. There is no difference between imported cotton-seed oil and domestic cotton-seed oil. They are identical.

A margarine containing 48 per cent of animal fats and the balance domestic vegetable oil, under this act, is taxable, and yet the two finished products are identical.

Under the Nebraska Constitution, art. III, section 18 and art. VIII, section 1, classification of property or business for taxation, whether the tax is a property tax or an excise tax, can be permitted only if the classification is reasonable and the tax operates uniformly upon all members of the class. The principle is announced in *Continental Ins. Co. v. Smrha*, 131 Neb. 791, 270 N. W. 122: "A classification of persons, corporations or property for taxation purposes must be based upon real and substantial differences in situation and circumstances surrounding the members of the class, and, to be valid, the law must operate uniformly upon every member of the class." That part of art. VIII, section 1 of the State Constitution that is material here, provides as follows: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property." That part of art. III, section 18 that is material is as follows: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Granting to any corporation, association, or individual any special or exclusive privileges, immunity or franchise whatever. * * * ." See, also, *State ex rel. Taylor v. Hall*, 129 Neb. 669, 262 N. W. 835; *Peterson Baking Co. v. City of Fremont*, 119 Neb. 212, 228 N. W. 256; *Speier's Laundry Co. v. City of Wilber*, 131 Neb. 606, 269 N. W. 119; *Moeller, McPherrin & Judd v. Smith*, 127 Neb. 424, 255 N. W. 551; *City of Lincoln v. Lincoln Gas and Electric Light Co.*, 100 Neb. 182, 158 N. W. 962; *State v. Farmers & Merchants Irrigation Co.*, 59 Neb. 1, 80 N. W. 52.

The record conclusively shows that the classification attempted on the basis of benefits received and objects to be accomplished does not rest upon any real differences in sit-

uation and circumstances from others within the class. In the absence of some real and substantial distinction which bears a reasonable, just and proper relation to the objects sought to be accomplished, a tax levied upon a part of those within the same class can not be sustained. The classification and the object to be accomplished must be germane. *Continental Ins. Co. v. Smrha, supra.*

We necessarily conclude that the classification in the instant case does not meet the requirements of uniformity as to class, required by art. VIII, section 1 and art. III, section 18 of the Constitution.

It is obvious that the unconstitutional provision was the principal inducement for the passage of the act, and consequently we will not undertake to sever the constitutional and unconstitutional portions, and the entire act must fall. When sections of a legislative act are unconstitutional, and such sections were an inducement to the passage of an act in its entirety, then the entire act is void, notwithstanding a saving clause therein. *Moeller, McPherrin & Judd v. Smith, supra.*

If portions of an act are unconstitutional, and the remainder is so connected with the invalid portions that it cannot be upheld without doing violence to the legislative intent as a whole, the entire act must fall. See *State ex rel. Taylor v. Hall, supra.*

Other constitutional questions are raised, but in view of our holding, need not be determined.

For the reasons given in this opinion, sections 81-294 to and including 81-2,110, R. S. 1943, are unconstitutional, being in violation of art. III, section 18 and art. VIII, section 1 of the Constitution of the state of Nebraska, and as to this plaintiff is void and to no effect, and judgment is entered accordingly.

JUDGMENT FOR PLAINTIFF.