DOROTHY SCHULTZ, APPELLANT, v. SCHOOL DISTRICT OF DORCHESTER, IN THE COUNTY OF SALINE, IN THE STATE OF NEBRASKA, A POLITICAL SUBDIVISION, ET AL., APPELLEES.

222 N. W. 2d 578

Filed October 24, 1974. No. 39449.

Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Jack L. Craven, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This case involves an interpretation of section 79-1254, R. R. S. 1943, as amended by L.B. 266 in 1971. The appellant originally brought the action in the District Court for Saline County, seeking a declaratory judgment to the effect that the foregoing section, as amended, creates in a teacher employed thereunder a substantive right of continued employment by the school district requiring a determination that "just cause" exists for the termination of employment. The District Court held it did not, and found generally against the appellant. We affirm.

Section 79-1254, R. R. S. 1943, in its present form, reads as follows: "The original contract of employment with an administrator or a teacher and a board of education of a Class I, II, III, or VI district shall require the sanction of a majority of the members of

the board. Any contract of employment between an administrator or a teacher who holds a certificate which is valid for a term of more than one year and a Class I, II, III, or VI district shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before May 15 to amend or to terminate the contract at the close of the contract period; Provided, that the secretary of the board shall, not later than April 15, notify each administrator or teacher in writing of any conditions of unsatisfactory performance or other conditions because of a reduction in staff members or change of leave of absence policies of the board of education which the board considers may be cause to either terminate or amend the contract for the ensuing school year. Any teacher or administrator so notified shall have the right to file within five days of receipt of such notice a written request with the board of education for a hearing before the board. Upon receipt of such request the board shall order the hearing to be held within ten days, and shall give written notice of the time and place of the hearing to the teacher or administrator. At the hearing evidence shall be presented in support of the reasons given for considering termination or amendment of the contract, and the teacher or administrator shall be permitted to produce evidence relating thereto. No member of the board of education may cast a vote in favor of the election of any teacher when such member of the board is related by blood or marriage to such teacher."

In order to determine the intent and meaning of the foregoing statute, and to reach a proper conclusion as to whether the statute creates a "property right" of continued employment in the teacher, it is necessary that we not only consider the language of the statute, but also carefully review the legislative history of the 1971 amendment thereof by L.B. 266.

As originally introduced by Senator Simpson, L.B. 266 provided among other things that a contract of a teacher employed by a Class I, II, III, or VI district could be terminated at any time during the term of the contract for a "reasonable and just cause." The districts were also instructed to establish "reasonable criteria and procedures" for evaluating its teachers at least once each school year, the teacher to be given notice in writing of the alleged areas of deficiency within 30 days after such evaluation. It was further provided that no less than 60 days following notice of deficiency the teacher should be reevaluated to determine whether the deficiency had been eliminated. If after reevaluation the board determined that the deficiency continued and may constitute a reasonable and just cause for termination of the contract of employment, the board is required to give notice in writing to the teacher of a hearing to be held not less than 10 days subsequent to such notice for the purpose of hearing evidence relevant to the deficiency in performance of the teacher and a continuation of his contract of employment. L.B. 266, as originally introduced, further provided that in making its decision as to whether there was reasonable and just cause to terminate the contract of employment, the board's decision must be based solely upon the deficiency reported in the evaluation and the evidence presented at the hearing. Senator Harold Simpson, the introducer of the bill, in testifying before the Committee on Education indicated that one of the purposes of the bill was to aid the teachers involved by removing the uncertainty regarding whether or not they were to be rehired. He also stated that the bill would enable the teachers to teach with an understanding of how their performance was to be evaluated.

The Committee on Education offered amendments to L.B. 266 providing among other things that at any time

during the term of the contract of employment a board of education may discharge a teacher or administrator and terminate a contract of employment for any of the following reasons: (1) Incompetency; (2) physical disability or sickness of any type which interferes with the performance of duties; (3) insubordination, which shall be deemed to mean a willful refusal to obey the school laws of this State, the rulings of the State Board of Education, or reasonable rules and regulations prescribed for the government of the schools of the district by the school board; (4) neglect of duty; or (5) immorality. The original form of L.B. 266, as introduced, remained intact under the proposed amendments in all other significant respects, including the provision for the establishment of reasonable and objective criteria for evaluating teaching performances and the provision requiring that the ultimate decision to terminate the contract be based solely upon the deficiency reported in the evaluation which may constitute reasonable and just cause for the termination.

L.B. 266 met with substantial opposition both in committee and on the floor of the Legislature. The basic concern of the opposition was that L.B. 266 would have the effect of creating a species of tenure system, similar to that which exists for teachers in Class IV and Class V school districts under sections 79-1255 to 79-1262, R. R. S. 1943. There was considerable apprehension expressed that a school district would only be able to terminate teaching contracts under certain prescribed circumstances, and also that L.B. 266 would be a further limitation upon the authority of the school districts to terminate such contracts at will.

As an apparent result of the opposition to L.B. 266 in its original form, and probably as a compromise between the opposing factions, substantial changes were made in the bill before its final adoption. As will be apparent from a reading of the bill as finally adopted,

all references to reasonable and just cause, and to decisions to terminate based solely upon deficiencies in performance, constituting reasonable and just cause, were deleted, as was also the provision requiring reasonable and objective criteria for the evaluation of teaching performances. In its final form, section 79-1254, R. R. S. 1943, reflects only two significant changes in language as a result of the amendments to L.B. 266 following its introduction. The first change is that section 79-1254, R. R. S. 1943, in its present form requires that by April 15 of each year the secretary of the board of education must "notify each . . . teacher in writing of any conditions of unsatisfactory performance or other conditions because of a reduction in staff members or change of leave of absence policies of the board of education which the board considers may be cause to either terminate or amend the contract for the ensuing school year." The second important change in section 79-1254, R. R. S. 1943, was the addition of a provision requiring that: "At the hearing evidence shall be presented in support of the reasons given for considering termination or amendment of the contract, and the teacher or administrator shall be permitted to produce evidence relating thereto." Other minor changes were made but we deem them to be immaterial to our present interpretation of the statute.

A fundamental principal of statutory construction is to ascertain the legislative intent and give effect to it, if it is a lawful one. School Dist. of Bellevue v. Strawn, 185 Neb. 392, 176 N. W. 2d 42 (1970). We have also held that in construing a statute to determine the legislative intent a court may consider the history of its passage, the amendments offered, and action taken by the Legislature thereon. Hueftle v. Eustis Cemetery Assn., 171 Neb. 293, 106 N. W. 2d 400 (1960).

Let us now examine the present language of section 79-1254, R. R. S. 1943, against the backdrop of the fore-

going well-established rules of statutory construction. It must be emphasized that section 79-1254, R. R. S. 1943, in its present form, has no express requirement that the cause of termination be "just cause" nor any language similar thereto. Where there is such a requirement it conceivably could be argued that termination could only be grounded upon causes that all reasonable men would regard as just or legitimate reasons for the termination of a teacher's employment. The legislative history of L.B. 266, as recited above, clearly indicates that the Legislature had the opportunity to impose such a requirement; but that having had that opportunity, it elected not to adopt such a provision. Such action or inaction, as the case may be, on the part of the Legislature is persuasive and indicates a legislative intention to affirmatively reject a standard of "just cause." We reach this conclusion notwithstanding the fact that section 79-1254, R. R. S. 1943, does require written notice of "any conditions of unsatisfactory performance . . . *which the board considers may be cause* to . . . terminate . . . the contract for the ensuing school year." (Emphasis supplied.) We do not believe that such language can be considered as creating a substantive right to employment which may be terminated only upon the basis of some objective standard of performance. The statute does not specify what the "conditions of unsatisfactory performance" may or may not be, and the determination of what constitutes such conditions is left entirely up to the board of education. Nor does that section, as it now appears, require the board to establish objective criteria for evaluation so that a teacher would be enabled to have knowledge in advance of what would be considered a satisfactory performance on his or her part. We note again that the Legislature had the opportunity, by virtue of the original wording of L.B. 266, to add such provisions to section 79-1254, R. R. S. 1943. Their ab-

sence in the present statute can only be regarded as indicative of a willful and intentional rejection of them by the Legislature.

We now turn attention to the language in section 79-1254, R. R. S. 1943, which provides for a hearing at which "evidence shall be presented in support of the reasons given for considering termination . . . of the contract, and the teacher . . . shall be permitted to produce evidence relating thereto." Does this language mean that the Legislature intended the statute to create a substantive right to employment which could be terminated only upon the basis of some objective standard of performance? We do not believe this result necessarily follows. Even in the absence of objective standards for the evaluation of the teacher's performance, it will undoubtedly be true that in many or most cases the actual cause of the proposed termination will be a legitimate cause which the board will be able to explain to the teacher at the time of the hearing in order that the teacher may be able to benefit from the board's evaluation of his or her performance. Whatever the cause of the proposed termination, whether it be considered "just" or not, the teacher will, at the hearing, be able to introduce evidence in an attempt to convince the board ultimately to decide against termination. The hearing will provide an opportunity for the teacher to persuade the board. Certainly, the hearing and the gathering of evidence called for can serve a useful function within the framework of the statute, and the provision for a hearing in taking of evidence need not necessarily relate to or be for the purpose of determining whether or not lawful reason exists to terminate the employment of the teacher.

Finally, we are greatly persuaded by the fact that in their consideration of and debates upon L.B. 266, the Legislature had before it as an example, and considered the adoption of, a "tenure" plan, similar to

that presently provided for tenured teachers in Class IV and V districts under sections 79-1255 to 79-1262, R. R. S. 1943. Section 79-1260, R. R. S. 1943, provides that even the indefinite contract of permanent teachers in Class IV and V school districts may be canceled for seven specific grounds set out therein, or other good and just cause, "but may not be made for political or personal reasons." Under section 79-1254, R. R. S. 1943, there is no limitation in the statute requiring that the ultimate decision of the board of education to terminate be based upon any particular objective standard of any kind. Under section 79-1260, R. R. S. 1943, applying to tenured teachers in Class IV and V districts, there is at least a negative limitation upon the boards of education that they may not decide to cancel the contracts of such teachers upon the basis of political or personal reasons. No such limitation appears in section 79-1254, R. R. S. 1943. Teachers employed in Class I, II, III, and VI districts do not possess the substantive right not to have their employment terminated for political or personal reasons. As originally introduced, L.B. 266 required that the ultimate decision by the board to terminate a contract must be based solely upon a deficiency constituting reasonable and just cause for such termination. That provision, however, was excised by the Legislature from L.B. 266 as finally passed, and no longer appears therein. We regard that fact as indicative of a legislative intent not to place any limitation upon the boards of education in respect to the reasons for which they decide to terminate teaching contracts.

We wish to make it clear that the conclusion we have reached is referable only to the interpretation of the statute discussed above. We do not pass upon the possible effect of contractual provisions contained in contracts between teachers and school districts which may have the effect of modifying that result. How-

ever, under the present statute the board may terminate a contract of a teacher in a Class I, II, III, or VI school for any cause whatsoever, or for no cause at all. This may or may not be a desirable situation, and may, in fact, be just the opposite of that desired or intended by the drafters and introducers of L.B. 266; nevertheless we feel it is the necessary result of the changes in, and amending of, that bill during its course through the Legislature.

We must therefore hold that section 79-1254, R. R. S. 1943, in its present form does not create in a teacher employed pursuant to its terms a substantive right of continued employment by the school district requiring determination that reasonable and just cause exists for termination of such employment. The District Court was correct in its interpretation of section 79-1254, R. R. S. 1943, as presently existing, and its judgment must be affirmed.

AFFIRMED.