**Clarence L. ROST, Plaintiff,**

v.

**Melvin HORKY et al., Defendants.**

**No. CV75–L–85.**

United States District Court,
D. Nebraska.

Feb. 26, 1976.

Richard R. Wood, Lincoln, Neb., for plaintiff.

John R. Higgins, Grand Island, Neb., for defendants.

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

URBOM, Chief Judge.

Clarence L. Rost, principal and athletic director of the Sargent, Nebraska, public school system, wrote similar letters to two school board members and their wives. Because of the letters, the school board terminated Rost's teaching contract at the school's year end. The constitutional propriety of that termination is the storm center of this lawsuit, which is brought under the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

A motion of the plaintiff, Rost, for a preliminary injunction has been denied, and now a motion of the defendants, who are the school board and individual members of it, for a summary judgment is ready for resolution.

These are the undisputed facts, chronologically:

January 13, 1975—The school board voted to request Rost's resignation, the reasons for which were stated to him in a meeting on January 15, 1975, at which time he agreed to resign.

January 22, 1975—Rost wrote and mailed the two letters.

February 21, 1975—A formal notice of nonrenewal was sent to Rost.

February 25, 1975—Rost by letter requested a hearing.

February 26, 1975—A new state statute, amendatory of § 79–1254, Neb.R.R.S. (known as L.B. 82), became effective, declaring, insofar as pertinent to this controversy, (1) that the contract of a teacher or administrator holding a valid certificate and employed more than two years shall be deemed renewed unless the board votes on or before May 15 to terminate it for just cause, (2) that the board, no later than April 15, shall notify the teacher or administrator in writing of the conditions of unsatisfactory performance which may be just cause, (3) that upon request the teacher or administrator shall receive a hearing before the board, and (4) that just cause shall mean incompetency, neglect of duty, unprofessional conduct, insubordination, immorality, physical or mental incapacity, other conduct which interferes substantially with the continued performance of duties, or a change of circumstances necessitating a reduction in the number of administrators or teachers to be employed.

March 5, 1975—Notice was given to Rost of a hearing set for March 6.

March 6, 1975—Counsel for the board and counsel for Rost agreed that no hearing would be held that day; counsel for the board informed Rost's counsel that at a future hearing the only evidence that would be adduced would be the two letters written by Rost dated January 22. The matter was returned to the board for further consideration.

April 7, 1975—The school board voted that the matter of Rost's renewal be referred to the school's attorney for "whatever is necessary not to renew Mr. Rost's . . . contract," by which was intended the setting into motion of a procedure for granting to Rost a full hearing; the reasons for termination were cited as unprofessional conduct, neglect of business of the school, and "other conduct which interferes substantially with the continued performance of duties."

April 8, 1975—Notice was sent to Rost of the board's action of April 7.

April 17, 1975—Rost requested a hearing.

April 29, 1975—A hearing was held before the board pursuant to agreement of counsel as to date and time, at which the two members who had received letters from Rost were disqualified to sit as members of the board but testified, and at which Rost and others testified on his behalf.

May 1, 1975—The four members of the board, not including the two disqualified, voted unanimously to terminate Rost's con-

tract at the end of the school year because conduct of Rost substantially interfered with continued performance of his duties in that there could be no compatible working relationship between him and the board, but that there was insufficient evidence to find unprofessional conduct or neglect of duty.

### NOTICE

The plaintiff challenges the sufficiency of the notice to meet due process requirements of the Fourteenth Amendment, arguing that the reasons for termination before the hearing should have been in writing and more specific and that the notice should have included the names and the expected nature of the testimony of witnesses.

■ That due process attached to the termination is unquestioned. If the statute, L.B. 82, is applicable to contracts extant at the time the statute became effective (the parties have made no issue of the applicability of the statute, so I do not decide it), it gave to Rost by its automatic renewal provisions a property interest sufficient to trigger the due process clause. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Such had not been true before L.B. 82. See *Schultz v. School Board of Dorchester*, 192 Neb. 492, 222 N.W.2d 578 (1974).

L.B. 82 required the notice prior to the hearing to be in writing and to state the conditions of unsatisfactory performance. The only written notice which stated any conditions of unsatisfactory performance was that of April 8. It was in general terms—unprofessional conduct, neglect of business, other conduct interfering with the continued performance of duties—but did not specify the letters or who would testify at the hearing. However, the school board's counsel, John R. Higgins, on March 6 orally informed Rost's counsel, Richard R. Wood, that the only grounds against Rost would be the writing of the letters of January 22 by Rost. True to the oral declaration by Higgins, no grounds were presented at the hearing of April 29 other than the writing of those two letters, and the only

persons who testified against Rost were the two addressees of the letters. What more could have been done by written notice is not apparent and nothing has been suggested by counsel.

It is true that the statute required written notice of the grounds. While a state statute may furnish the property right to which due process attaches, a state statute does not dictate the scope of the process which is due. That is determined by fairness, which may not require all the procedure the statute requires for reasons other than fairness. For example, a requirement of writing may be for ease of proof, which is an interest beyond the scope of fairness. Thus, constitutional due process does not tract state statutory procedures.

In the present case fairness required notice. The oral notice was direct and conveyed as much factual information as a written one could have. There was no doubt of the identity of the letters. Rost, as the author, was as familiar with the content of the letters as were the recipients. There was nothing complicated or otherwise unusual about the substance of the communications that would press for written transmittal. Accordingly, the oral notice was adequate for due process purposes.

Similarly, the content of the oral notice, coupled with the written notice of April 8, was sufficient. The latter generalized in statutory language; the former specified the evidentiary basis of the broader charges. The orally declared issue was limited to the letters; therefore, involvement of the addressees was obvious. That fulfills due process. In the context of this case, at least, notice of the names of who would testify and the substance of the expected testimony was unnecessary. Cf. *Johnson v. Angle*, 341 F.Supp. 1043 (D.C.Neb.1971).

### PARTIALITY OF TRIBUNAL

■ A claim that the school board members had prejudged the case is not merited by the evidence. The recipients of the letters did not sit in making the final decision about Rost. Two of those who did make

the final decision in May had voted in January to request Rost's resignation, but the other two had voted against it. Each declared at the outset of the April 29 hearing that he or she could be impartial, and nothing in the evidence militates against that unless it be the fact that two had in January voted to request resignation.

I cannot conclude that the impartiality of a tribunal member is so fragile as to be destroyed merely by previously having made a decision. See *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).

### ARBITRARINESS

Lastly, the plaintiff urges that the decision of the board was arbitrary and capricious and in violation of his right of free speech.

This court's statement in *Ahern v. Board of Education of School District of Grand Island*, 327 F.Supp. 1391 (D.C.Neb.1971), remains accurate.

> "Due process is a flexible concept, but means, at least, that there must be (1) a rational connection between the reason for the discharge and a rightful interest of the state, (2) a basis in fact for the reason for the discharge . . . and (3) a reason for discharge other than the exercise by the employee of a constitutional right . . . These elements, for convenience, may be referred to as substantive due process."

Inspection of the letters written by Rost shows them to contain, among many others, the following assertions:

> ". . . your premice [sic] that 'I was too tough on the kids' was a coward's way of dealing with a situation . ."

> ". . . your stated reasons for releasing me were pretty phony and weak."

> ". . . I've been double crossed by a man who is using his power for personal reasons . . ."

> ". . . you and your wife use the high office you have been elected into for your personal gain."

> "If anyone is laughing we both know it is your sons . . . Anyway, the people I'm never sure of are a minute minority of the adult population who like to fight their kids battles, . . . and then stab me in the back when they don't get their way. If you know anything of psychology, sir, analyze that one and see if you know anyone the description fits."

> "You have given the new school board members an excellent first lesson in 'cloak and dagger' methods of operating."

> "I realize your revenge in this situation will be to ruin my career so go right ahead and proceed. I have had it with petty manipulators and their 'do gooder' wives burning down my store so have at it man. I don't want to depend on such as you for a future as your educational theory and leadership abilities can be likened to a Pygmy's knowledge of brain surgery."

> "Your wife, because of her dislike for me, . . . leads me to believe borders on pure hatred. . . ."

> "She has negatively affected your common sense and good judgment for years . . ."

Harmony between a principal and the school board is a legitimate educational interest of a state, and statements made to members of a school board may rationally affect adversely that harmony. It is reasonable to conclude that the Rost letters reflected a lack of restraint that augured ill for future tranquility. Indeed, direct evidence at the hearing was that there could be no good working relationship between the recipients of the letters and Rost.

■ Substantive due process demands that Rost's contract not be terminated if the reason was his exercise of a constitutional right of free speech. The freedom is not absolute, and the task is to arrive at a balance between the interests of the teacher "as a citizen, in commenting on matters of public concern and the interest of the State as an employer . . . " *Pickering v. Board of Education of Township High*

*School District 205, Will County,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ In *Nebraska Department of Roads Employees Association v. Department of Roads,* 364 F.Supp. 251 (D.C.Neb.1973), this court held that public criticism of an employer was constitutionally protected free speech in the absence of evidence of a day-to-day working relationship which was so close as to demand personal loyalty or confidence or harmony. In this case there is that kind of relationship between the principal and the school board. The school board sets the school's policy and must look to the superintendent and the principal to administer that policy. The principal is in charge if the superintendent is absent, and the testimony indicates that the superintendent at Sargent was gone with enough frequency to make the principal's duties in that regard substantial. Although the principal was not permitted to attend board meetings in an official capacity, his connection, particularly in the superintendent's absence, with the chairman of the board, as one of the recipients of the offending letters was, must be close and harmonious. That causes the critical letters to be unprotected by the First Amendment, or perhaps more · accurately stated, it causes Rost's First Amendment interests to give way to the school board's interest in harmony.

### CONCLUSION

For the foregoing reasons, I conclude that the motion for summary judgment must be granted, because there are no genuine issues of fact remaining and the defendants are entitled to judgment as a matter of law.